Pennsylvania Labor Relations Board, Appellant, *v.* Mars Area School District, Appellee.

Argued May 6, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Forest N. Myers,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, and *James L. Crawford,* Assistant Attorney General, for appellant.

*Charles E. Dillon,* with him *Coulter, Gilchrist, Dillon & McCandless,* for appellee.

OPINION BY JUDGE BLATT, September 11, 1975:

The Pennsylvania Labor Relations Board (PLRB) here seeks reversal of a decision and order of the Court of Common Pleas of Butler County, setting aside a final PLRB adjudication. In that adjudication, the PLRB had found that the Mars Area School District (School District) had engaged in unfair labor practices under the Public Employe Relations Act[1] (Act 195).

The Mars Area Association of School Service Personnel (Union) had executed a collective bargaining agreement with the School District on May 1, 1972 to be effective for the 1972-1973 school year. This agreement covered, among other things, the wages, hours, terms and conditions of employment for 11 teachers' aides who had been employed on a full-time basis during the preceding 1971-1972 school year. When, however, the final budget for the 1972-1973 school year was adopted by the School District on June 26, 1972, no provision was made for the continued employment of the teachers' aides. Their employment status, therefore, was terminated.

_____

1. Act of July 23, 1970, P. L. 563, 43 P. S. §1101.101 et seq.

The Union filed an unfair labor practice charge with the PLRB which, after a hearing, found that the employment of eleven teachers' aides was terminated by the School District and that they were replaced by unpaid part-time volunteer aides without the School District first having consulted or bargained with the Union pursuant to Section 701 of Act 195, 43 P.S. §1101.701. Section 701 sets forth those matters subject to bargaining as follows:

"Collective bargaining is the performance of the mutual obligation of the public employer and the representative of the public employes to meet at reasonable times and to confer in good faith *with respect to wages, hours and other terms and conditions of employment,* or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached but such obligation does not compel either party to agree to a proposal or require the making of a concession." (Emphasis added.)

The School District admitted that it had terminated the services of the eleven teachers' aides primarily for economic reasons, but it did not admit that they were replaced by unpaid volunteers. It argued before the PLRB that its action was clearly within its inherent managerial rights and thus not subject to bargaining under Section 702 of Act 195, 43 P.S. §1101.702. Section 702 sets forth the matters not subject to bargaining as follows:

"Public employers *shall not be required to bargain over matters of inherent managerial policy,* which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and selection and direction of personnel. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as

the impact thereon upon request by public employe representatives." (Emphasis added.)

Relying upon *Fibreboard Paper Products Corporation v. National Labor Relations Board,* 379 U.S. 203 (1964) the PLRB ruled that the elimination of paid teachers' aides and their replacement by unpaid volunteer aides was a proper subject for bargaining and that the School District, therefore, had been guilty of unfair labor practices under Section 1201(a)'(1) and (5) of Act 195, 43 P.S. §1101.1201(a)(1) and (5).[2] The PLRB ordered that the employes whose services had been terminated should be reinstated with back pay. On appeal, the court below reversed and the PLRB appealed to this Court.

Our scope of review is limited to a determination of whether or not the PLRB findings are supported by substantial and legally credible evidence and whether or not the conclusions deduced therefrom are reasonable and not arbitrary, capricious or illegal. *Borough of Wilkinsburg v. Sanitation Department of the Borough of Wilkinsburg,* 16 Pa. Commonwealth Ct. 640, 330 A.2d 306 (1975.)

There appears to be no substantial disagreement with the significant findings of fact by the PLRB. Disagreement arises only as to the law to be applied to the facts as found. In *Fibreboard, supra,* upon which the PLRB relied, the United States Supreme Court held that the "contracting out" of work previously performed by members of an existing bargaining unit is a subject about which the National Labor Relations Act requires employers and the representatives of their employees to bargain collectively "as these are included within the

---

2. "(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

. . . .

"(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative."

concept of conditions of employment." *Fibreboard,* however, is neither controlling on its facts nor upon its law.

Factually, the instant case is distinguishable from *Fibreboard* because volunteer aides were not specifically sought to replace the bargaining unit employes. Actually, they had long before been working for the school district performing many of the duties performed by the teachers' aides and they continued to perform such duties while assuming a greater portion thereof upon the termination of the teachers' aide program. Other functions which had been performed by the teachers' aides, such as pupil supervision during non-instructional periods, were assumed by certified professional teachers, because guidelines promulgated by the Secretary of Education early in 1972 had removed such duties from the teachers' aide programs. Because of these guidelines, therefore, even had the employment of teachers' aides not been terminated, they would not have been able to perform, during the 1972-1973 year all of the duties which they had previously performed. The School District clearly did not "contract out" the work as was done in *Fibreboard.*

Moreover, it is now well established that the law as it applies to private employers under Section 8(a) of the National Labor Relations Act, 29 U. S. C. 158(a) does not govern the interpretation of similar law as it applies to public employers under Act 195, and this distinction cannot be minimized. *Pennsylvania Labor Relations Board v. State College Area School District,* Pa. , 337 A.2d 262 (1975); *Borough of Wilkinsburgh v. Sanitation Department of the Borough of Wilkinsburg, supra.* In *State College,* our Supreme Court discussed the interrelationship of Sections 701 and 702 of Act 195 and held that:

> "Where an item of dispute is a matter of fundamental concern to the employees' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith

bargaining under Section 701 simply because it may touch upon basic policy. It is the duty of the Board in the first instance and the courts thereafter to determine whether the impact of the issue in the interest of the employe in wages, hours, and terms and conditions of employment outweighs its probable effect on the basic policy of the system as a whole. If it is determined that the matter is one of inherent managerial policy but does not affect wages, hours and terms and conditions of employment, the public employer shall be required to meet and discuss such subjects upon request by the public employe's representative pursuant to Section 702." Pa. at , 337 A.2d at 268.

Here the Union and the School District entered into a collective bargaining agreement for the 1972-1973 school year on May 8, 1972. This agreement included provision for salary increases for teachers' aides. Around that same time the School District was confronted with a need to reduce its budget so as to avoid a tax increase. The draft budget of the School District on June 5, 1972 had included appropriations for the teachers' aide program, but, when submitted in final form, the teachers' aide program had been eliminated. There can be no doubt that the program was eliminated for economic reasons as found by the PLRB. The testimony reveals, moreover, that this was not the only program to suffer cutbacks and that the School District's decision resulted after a careful consideration of program priorities. Continuation of the teachers' aide program simply was not as highly valued as continuing a full complement of professional employees. We believe that this budgetary decision by the School District clearly involved matters of inherent managerial policy and, therefore, was not a proper subject of collective bargaining.

We also note that the Union did not charge the School District with refusing to comply with the "meet and discuss" provision of Section 702. We need not consider,

therefore, whether or not the School District committed an unfair labor practice in this regard under Section 1201 (a) (9) of Act 195, 43 P.S. §1101.1201 (a) (9).[3]

The decision and order of the court below is affirmed.

3. Section 1201 (a) (9) states the public employers are prohibited from "[r]efusing to comply with the requirements of 'meet and discuss.' "