417 A.2d 1144

**Robert GERIOT, Appellant,**

v.

**COUNCIL OF the BOROUGH OF DARBY, the Borough of Darby,**

**Pennsylvania Labor Relations Board, Intervenor.**

Supreme Court of Pennsylvania.

Argued April 24, 1980.

Decided July 3, 1980.

64

Michael A. Paul, Media, for appellant.

James L. Crawford, Larry J. Rappaport, Asst. Attys. Gen., Harrisburg, for appellant-intervener—PLRB.

Peter J. Nolan, Media, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

In this labor dispute between Darby Borough and its police employees, the Commonwealth Court held that a court of common pleas has no jurisdiction, in an action in mandamus, to order the municipality to perform its contractual duty arising out of a collective bargaining agreement. The Commonwealth Court concluded that the task of enforcing an arbitration award interpreting a collective bargaining

agreement between parties covered under Act 111 is exclusively within the jurisdiction of the Pennsylvania Labor Relations Board (PLRB). We agree with the common pleas court, appellants Darby police and intervenor PLRB that such a reading of relevant labor statutes and case law authority is erroneous. Accordingly, we reverse the order of the Commonwealth Court, 38 Pa.Cmwlth. 337, 394 A.2d 1298 and remand to the court of common pleas for determination of appropriate relief on the merits of appellants' complaint.

On September 10, 1975 appellee, the Borough of Darby, and appellants, Darby police, entered into an agreement "concerning terms and conditions of employment of the police officers of the Borough of Darby for the calendar year commencing January 1, 1976." [1] Disagreeing as to the proper computation of wages for the year 1977, the parties entered into binding arbitration pursuant to "Act 111," Act of June 24, 1968, P.L. 237, as amended, 43 P.S. § 217 et seq. On December 20, 1976, the Board of Arbitration entered an arbitration award providing that:

"Commencing January 1, 1977, the annual wage for each police officer shall be increased by Three Hundred ($300.00) Dollars plus a cost of living adjustment for all police equal to the increased cost of living as measured by the C.P.I. for the Philadelphia Region for the twelve month period ending October, 1976, to be added to the base wage."

1. Paragraph one of the collective bargaining agreement provides: "1. Wages and Cost of Living: Beginning January 1, 1976, the annual wage for each officer shall be increased by $350.00 plus the percentage of increased cost of living as measured by the C.P.I. for Philadelphia during the 12 months ending October, 1975. Said cost of living is incorporated in and shall become part of the basic wage as of January 1, 1977. By way of illustration the basic wage of a patrolman on January 1, 1976, will be computed as follows:

| | |
|---|---|
| 1975 Basic Wage | $13,160.15 |
| 1976 Standard of Living Increase | 350.00 |
| Cost of Living Increase | |
| (assuming hypothetically that during the 12 months ending 10/75 the cost of living increase is 5%) | 675.00 |
| TOTAL | $14,185.50" |

On February 11, 1977, appellant Geriot, on behalf of a class of Darby police officers, filed a complaint in mandamus in the Court of Common Pleas of Delaware County. The complaint alleged that appellee was not computing the base wage in accordance with the terms of the collective bargaining agreement,[2] and requested the court to order appellee to pay appellants' wages in conformity with the agreement. Appellants' position was that although they received the cost of living increase for 1976, this increment was not included in the permanent base wage for computation of 1977 wages.

Appellee filed a preliminary objection, contending that the complaint should be dismissed because "the Plaintiffs have an adequate remedy at law other than an action in mandamus." Appellees claimed that appellants were seeking judicial review of the arbitration award, and that such review is exclusively available pursuant to Pa.R.C.P. 247.[3] It was

2. Paragraphs 6 and 7 of appellants' complaint in mandamus allege:
    "6. The defendant has not, as of January 1, 1977, been computing the plaintiffs' base wage in a manner or fashion contemplated by the 1976 Collective Bargaining Agreement, in that they have not incorporated the cost of living, as measured by the C.P.I. for Philadelphia during a 12 month period ending October, 1975, into the basic wage as of January 1, 1977, in computing the basic wage for each of the police officers for the Borough of Darby for the year commencing January 1, 1977.
    7. Despite requests made on behalf of the plaintiffs for the inclusion of the cost of living aforesaid as part of the base wage for 1977, and as agreed to by the Council for the Borough of Darby in the agreement Exhibit "A" aforesaid, the defendant has failed, ·refused to perform the duties imposed upon them in connection with the payment thereof."

3. Pennsylvania Rule of Civil Procedure 247 provides:
    "Review of Arbitration Awards in Local Public Employment Disputes:
    (a) Review of an award of arbitrators appointed in conformity with an Act of Assembly to arbitrate a dispute between a public employer and employe not within the scope of Rule 703 of the Pennsylvania Rules of Appellate Procedure shall be sought exclusively in the courts of common pleas. The application for review shall be filed within thirty (30) days after the date of the award of the arbitrators.
    (b) The order of a court of common pleas under subdivision (a) of this rule shall be subject to appeal to the Commonwealth Court in the manner prescribed by Chapter 9 of the Pennsylvania Rules of Appellate Procedure.

appellee's contention that since the 30-day period for filing an "application for review" had lapsed, appellants were barred from relief.

The court of common pleas dismissed appellee's preliminary objection, holding that (1) appellants were not seeking judicial review of the arbitration award, and (2) that a contractual obligation imposed by law may be enforced against a municipality by an action in mandamus. On appeal, the Commonwealth Court dismissed the mandamus action on the ground that the court of common pleas was without jurisdiction. The Commonwealth Court held that appellants' exclusive remedy for breach of the collective bargaining agreement was the filing of an unfair labor practice grievance with the PLRB pursuant to the Public Employees Relations Act (PERA or "Act 195"), Act of July 23, 1970, P.L. 563, § 1201(8), 43 P.S. § 1101.1201(8) (Supp. 1979). In so holding the court stated:

> "PERA and Act 111 are to be read *in pari materia.* The exclusive jurisdiction to resolve charges of unfair labor practices is placed in the Pennsylvania Labor Relations Board by Section 1301 of PERA, 43 P.S. § 1101.1301. The reasoning behind this is set forth by Justice Pomeroy, speaking for a unanimous court, in *Philadelphia Fire Officers Association v. Pennsylvania Labor Relations Board,* 470 Pa. 550, 369 A.2d 259 (1977), reversing, 18 Pa.Cmwlth.Ct. 487, 336 A.2d 477 (1975). . . ."

38 Pa.Cmwlth.Ct. 337, 338, 394 A.2d 1298, 1299 (1978).

In our view, the Commonwealth Court's reliance on *Philadelphia Fire Officers* is misplaced. In that case, this Court held that the PLRA conferred jurisdiction on the PLRB to conduct a representation election in a bargaining unit consisting of fire and police officers. In so holding we sought to avoid the "absurd" result of requiring "employees of the courts of common pleas to conduct elections in firehouses and police barracks and stations." 470 Pa. at 557, 369 A.2d

Adopted June 23, 1976, effective July 1, 1976."
See also *Washington Arbitration Case,* 436 Pa. 168, 259 A.2d 437 (1969).

at 262. Accordingly, in *Philadelphia Fire Officers*, Act 111, which does not cover the subject of representation elections, was read in *pari materia* with the PLRA.[4] Thus read, labor boards would "conduct secret elections through their staffs whose task it is to journey from workplace to workplace for such purpose." Id., 470 Pa. at 557, 369 A.2d at 262.

Hence, in *Philadelphia Fire Officers* practical considerations dictated that the PLRA, not the PERA, be read in *pari materia* with Act 111. Significantly, however, we did not hold that PERA governed the employees covered under Act 111. Rather, we stated:

> "We recognize, of course, that employees covered by Act No. 111 are not in any respect covered by P.E.R.A. (Act 195) and that Act 111 provides its own unique, specific procedure, namely, binding arbitration, as the final resort in the event of a bargaining impasse. 43 P.S. §§ 217.3—217.8 (Supp.1976–77)."

Id., 470 Pa. at 558, 369 A.2d at 262.

By its own terms, PERA excludes police and fire officers from coverage by the Act:

> " 'Public employe' or 'employe' means any individual employed by a public employer but shall not include . . . those employes covered under the act of June 24, 1968 (Act 111), entitled 'An act specifically authorizing collective bargaining between policemen and firemen and their public employers; providing for arbitration in order to settle disputes, and requiring compliance with collective bargaining agreements and findings of arbitrators.' "

Act of July 23, 1970, P.L. 563, § 301, 43 P.S. § 1101.301(2). Section 1201(a)(8) of the PERA, which was viewed as controlling by the Commonwealth Court, has no application to

**4.** "Statutes in pari materia

(a) Statutes or parts of statutes are in pari materia when they relate to the same persons or things or to the same class of persons or things.

(b) Statutes in pari materia shall be construed together, if possible, as one statute."

Act of November 25, 1970, P.L. 707, added December 6, 1972, P.L. 1339, § 3, 1 Pa.C.S.A. § 1932 (Supp.1964–1978).

proceedings initiated under Act 111.[5] PERA, through § 1201(a)(8), governs enforcement of "grievance" arbitration awards. It does not encompass so-called "interest" arbitration which is the subject of the present action.[6] Thus the conclusion of the Commonwealth Court, that enforcement of a collective bargaining agreement incorporating a final and binding arbitration award may only be enforced through the filing of an unfair labor practice pursuant to § 1201 of PERA, is manifestly incorrect. The Commonwealth Court's result ignores the "unique and specific procedures" provided in Act 111 which were tailored by the Legislature to the specific requirements of the employment relations of municipalities and police and fire labor forces.

The remedy of mandamus is available against a municipality where there is a clear contractual right, arising out of a collective bargaining agreement, to be enforced. See *Christian v. Johnstown Police Pension Fund*, 421 Pa. 240, 218 A.2d 746 (1966) (contractual obligation imposed by law may be enforced by either mandamus or assumpsit); see also, *Dombrowski v. Philadelphia*, 431 Pa. 199, 245 A.2d 238 (1968) (because of contractual relationship between former employee and municipality, mandamus action by former employee is available to ensure financial soundness of mu-

---

**5.** Section 1201(a)(8) provides:

"Public employers, their agents or representatives are prohibited from refusing to comply with provisions of an arbitration award deemed binding under § 903 of Article IX."

Section 903 provides:

"Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree. Any decisions of the arbitrator or arbitrators requiring legislation will only be effective if such legislation is enacted."

43 P.S. § 1101.903.

**6.** "Grievance" or "contract interpretation" arbitration contemplates the disputed interpretation of an existing contract. "Interest" arbitration contemplates an inability of the parties to agree on the terms of a collective bargaining agreement. See generally, J.D. Thrush, Pennsylvania Public Employe Labor Relations, 231–32 (1st Ed. 1977).

nicipality's retirement system). Here, the collective bargaining agreement, incorporating the cost of living increase provided for in the arbitration award, gave rise to a binding contractual duty on the part of appellee. Thus a judicial determination of a breach of that contractual obligation is properly remediable by mandamus. The order of the Commonwealth Court to the contrary is reversed and the case is remanded to the court of common pleas for proceedings to determine the merits of appellants' claim that the collective bargaining agreement was breached.

Order of the Commonwealth Court reversed and the case remanded to the Court of Common Pleas of Delaware County.

NIX, J., files a dissenting opinion.

NIX, Justice, dissenting.

The majority opinion misconstrues the true nature of appellant's complaint. The majority finds that the complaint involves enforcement of an interest arbitration award and holds that the common pleas court has jurisdiction to enforce interest arbitration awards. (Maj. opinion at 1147–1148.) To the contrary, the instant dispute focuses upon the proper interpretation of the 1977 interest arbitration award. This basic disagreement causes my dissent. Moreover, Act III grants policemen and firemen the right to settlement of their grievances, but Act III is devoid of any provision whereby officers may pursue this right. I am of the view that this vacuity should be bridged by reading Act III in pari materia with PERA to provide for mandatory arbitration of grievances for policemen and firemen.

On September 10, 1975, the Borough of Darby entered into an agreement "concerning the terms and conditions of employment of the Police officers of the Borough of Darby for the calendar year commencing January 1, 1976." Paragraph 1 of the agreement provided:

"1. Wages and Cost of Living: Beginning January 1, 1976, the annual wage for each officer shall be increased

by $350.00 plus the percentage of increase cost of living as measured by the C.P.I. for Philadelphia during the 12 months ending October, 1975. Said cost of living is incorporated in and shall become part of the basic wage as of January 1, 1977. By way of illustration, the basic wage of a patrolman on January 1, 1976, will be computed as follows:

| | |
|---|---:|
| 1975 Basic Wage | $13,160.15 |
| 1976 Standard of Living Increase | 350.00 |
| Cost of Living Increase (assuming hypothetically that during the 12 months ending 10/75 the cost of living increase is 5%) | 675.00 |
| TOTAL | $14,185.50" |

The Borough and the police force could not agree on salary and conditions of employment for the 1977 calendar year. Thus, an arbitration panel was formed, hearings were held, and on December 20, 1976, the arbitrators entered an interest arbitration award applicable January 1, 1977. The interest arbitration award provision concerning wages provided:

"Commencing January 1, 1977, the annual wage for each police officer shall be increased by Three Hundred ($300.00) Dollars plus a cost of living adjustment for all police equal to the increased cost of living as measured by the C.P.I. for the Philadelphia Region for the twelve month period ending October, 1976, to be added to the base wage."

During the first week of January 1977, the Borough paid the policemen's salaries in accordance with the Borough's interpretation of the interest arbitration award. The policemen did not petition for review, nor did they institute suit within thirty (30) days from the date of the Arbitrator's award. On February 11, 1977, the appellant filed a mandamus action on behalf of himself and on behalf of a class of Darby police officers in the common pleas court of Delaware County. The Borough filed preliminary objections asserting inter alia that the appellant had an adequate remedy at law and consequently the mandamus complaint should be dismissed.

In paragraphs 6 and 7 of appellant's complaint, he framed the issue as follows:

"6. The defendant has not, as of January 1, 1977, been computing the plaintiffs' base wage in a manner or fashion contemplated by the 1976 Collective Bargaining Agreement, in that they have not incorporated the cost of living, as measured by the C.P.I. for Philadelphia during a 12 month period ending October, 1975, into the basic wage as of January 1, 1977, in computing the basic wage for each of the police officers for the Borough of Darby for the year commencing January 1, 1977.

7. Despite requests made on behalf of the plaintiffs for the inclusion of the cost of living aforesaid as part of the base wage for 1977, and as agreed to by the Council for the Borough of Darby in the agreement Exhibit "A" aforesaid, the defendant has failed, refused to perform the duties imposed upon them in connection with the payment thereof."

In my judgment, it is apparent that neither party disputed the binding effect of the award, but rather that the controversy focused upon how the basic wage was to be computed under the terms of the award. To argue that appellant was simply seeking enforcement and that the Borough raised the interpretation question as a defense for its non-compliance, assumes the very question that is at issue, i.e. what is the proper interpretation of the award. Before the common pleas court could order enforcement as requested by the complainants, the court was called upon to first determine the rights and duties created by the award. A prerequisite to this mandamus action is a resolution of whether or not the terms of paragraph one of the 1976 award had been incorporated into "the basic wages" to be paid during 1977. Although the 1976 collective bargaining agreement expressly states that the cost of living increase "shall become part of the basic wages as of January 1, 1977," the 1977 interest arbitration award omits reference to the inclusion of this increment in the permanent wage base for computation of 1977 wages. Thus, the proper analysis of the issue which

confronted the common pleas court was an interpretation of the interest arbitration award, and not the enforceability of the award.[1]

Under my analysis, the question that should have been addressed by the majority in this appeal is the proper forum to hear this interpretation dispute. I will therefore express my views on that subject.

In response to the threat of strikes by fire and police personnel, in great haste, the legislature in 1968 passed the Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1–217.-10 (1979–80 Supp.) (Act III). Act III conferred upon policemen and firemen the right to organize, but in the interest of the public's health, safety and welfare, these public employees were not given the right to strike. Section 217.1 specifically grants policemen and firemen the right to collectively bargain for the terms and conditions of their employment, as well as ". . . the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." Consistent with the legislature's intent to prevent strikes of police and fire personnel, Act III contains detailed provisions involving the time to begin collective bargaining, 43 P.S. § 217.3, the number of days to engage in collective bargaining, a description of when an impasse occurs during collective bargaining, 43 P.S. § 217.4, the procedure to request an interest arbitrator if an agreement is not reached, and restricts the right to appeal to courts from an interest arbitration award, § 43 § 217.7. Although the legislature also granted the police and fire personnel the right to remedy their grievances under 217.1, unlike the right to collectively bargain, Act III is devoid of any procedure under which the parties may pursue this right.

1. The Court of Common Pleas of Delaware County acknowledged that the action involved an interpretation of the award when it said:
"A reading of the Complaint makes it clear that plaintiff is seeking a judicial determination of whether or not the terms of paragraph I of the 1975 contract have been incorporated into the 'basic wages' to be paid Plaintiff in 1977. The award of the arbitrators provides for an increase to be made to the basic wages to be paid in 1977, but, said award does not fix 'basic wages.' Whether or not 'basic wages' was part of the subject matter before the arbitrators is not known to the Court at this time."

In order to avoid an unreasonable or absurd result, Act III should be read in pari materia with PERA Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.101 *et seq*. The legislature has declared that statutes are in pari materia when they relate to the same class of persons or things. 1 Pa. C.S.A. § 1932(a). *See also, In re William L*, 477 Pa. 322, 383 A.2d 1228 (1978). When statutes are in pari materia, they shall be construed together whenever possible as if one statute. 1 Pa. C.S.A. § 1932(b). *See Commonwealth v. PEC*, 472 Pa. 530, 372 A.2d 815 (1977). In *Philadelphia Fire Officers v. PLRB*, 470 Pa. 550, 369 A.2d 259 (1977), we recognized that Act III, PERA, and PLRA, Act of June 1, 1937, P.L. 1168, No. 294, 43 P.S. §§ 211.1 *et seq.*, all concern the subject of labor relations. 470 Pa. at 555, 369 A.2d at 261. We noted that Act III granted the police and firemen the right to collectively bargain, but lacked the procedures to designate the collective bargaining agent. In order to avoid an absurd result prohibited by 1 Pa. C.S.A. § 1922(1), we read Act III in pari materia with PLRA and empowered the Pennsylvania Labor Relations Board to conduct representation elections.

The facts of the instant case are analogous to the facts of *Philadelphia Fire Officers*. Here the legislature granted the policemen and firemen the right to resolve their grievances in accordance with the act, but Act III neglected to establish procedures whereby the grievances could be remedied. Recognizing that the legislature did not intend the absurd result of granting a right without providing for its enforcement, we should read Act III in pari materia with PERA.

Act III should be read in pari materia with PERA in order to provide policemen and firemen with a method to resolve their grievances.[2] PERA contains extensive provisions for grievance resolution, reflecting the legislature's recognition of the importance of harmonious labor relations in the public sector. Section 903, 43 P.S. § 1101.903 states:

**2.** The PLRA does not have any provisions requiring mandatory arbitration grievances. If Act III was read in pari materia with PLRA, any grievance procedure would be provided for solely by the terms of the collective bargaining contract.

"§ 1101.903   Disputes under collective bargaining agreement;   mandatory arbitration

Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement[3] is mandatory.   The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree."

To protect the employee's right to mandatory arbitration of grievances, the legislature has declared that it is an unfair labor practice to refuse to discuss grievances with an employee representative.[4]   43 P.S. § 1101.1201(a)(5).   Moreover, if either the employee or the employer fails to comply with an arbitration award deemed binding under Section 903, 43 P.S. § 1101.903, the party commits an unfair labor practice. 43 P.S. §§ 1101.1201(a)(8) and 1201(b)(8).   The Pennsylvania Labor Relations Board is given the exclusive power to prevent unfair labor practices which accrue under PERA. 43 P.S. § 1101.1301.

It is appropriate to read Act III in pari materia with PERA.   First, Act III is a skeletal statute and PERA adds meaningful substance to Act III's provisions.   PERA is a

3.   Unlike other PERA employees, guards and court personnel are prohibited from striking and if an impasse occurs during collective bargaining they must submit to binding arbitration.   43 P.S. § 1101.-1001.   Also, public employees may agree to enter into binding contract arbitration.   43 P.S. § 804.   Even though the literal terms of 43 P.S. § 1101.903 refer to mandatory arbitration of grievances which arise under a "collective bargaining agreement," this section applies to binding interest arbitration awards which arise under 43 P.S. § 1101.804 and 43 P.S. § 1101.805.

4.   The courts have also recognized the desirability of arbitrating grievances and have held that "any dispute which even arguably involves the interpretation of the agreement must be submitted to arbitration."   *Stroudsburg Bd. of Educ. v. PLRB*, 39 Pa. Cmwlth. 200, 208, 395 A.2d 622, 623 (1978).   Moreover, on the national level, binding arbitration of grievances which arise during the term of a labor agreement was once the exception in the public sector, but is rapidly becoming the norm.   U. S. Department of Labor, Bureau of Labor Statistics, Grievance and Arbitration Procedures in State and Local Agreements, Bull. No. 1833 (Washington:   1975).

comprehensive statute, the product of intense study, debate and compromise in the Pennsylvania legislature. Governor's Commission to Revise the Public Employee Laws of Pennsylvania, Report and Recommendations (June 1968). PERA, one of the first public employee labor relation statutes, served as a model for other public employee statutes throughout the nation, and should also serve as an adjunct to Act III.

Second, it is logical to construe Act III with PERA, a public employee statute, rather than with PLRA, a private employee statute. Pennsylvania courts have consistently recognized that "[t]he distinction between the public and private sectors cannot be minimized. Employers in the private sector are motivated by profit to be returned from the enterprise where as public employers are custodians of public funds and are mandated to perform government functions as economically and effectively as possible." *PLRB v. State College A.S.D.*, 461 Pa. 494, 499–500, 337 A.2d 262, 264 (1975). *See also, PLRB v. Mars Area School District*, 21 Pa.Cmwlth. 230, 344 A.2d 284 (1975); B. Aaron, J. Grodin, J. Stern, *Public Sector Bargaining*, 191 (1979).

Third, the goals of the public employee labor relations statutes are similar and reading Act III in pari materia with PERA is consistent with the legislature's objective of promoting harmonious labor relations among public employees and their employers. The central theme of PERA is accommodating public employee demands, while recognizing that the public's interest is paramount. 43 P.S. § 1101.101. Act III imposes a duty of "good faith" on public employees and their employers to exert every reasonable effort to settle disputes. 43 P.S. § 217.2. In contrast, PLRA only attempts to balance the rights of the private employer and their employees, and the statute is devoid of any mandate to bargain in "good faith." 43 P.S. § 211.5.

Fourth, the fact that PERA excludes policemen and firemen from its definition of "employees" is not an obstacle to prevent reading PERA in pari materia with Act III to provide for mandatory arbitration of grievances. In *Phila-*

*delphia Fire Officers Association,* we read PLRA in pari materia with Act III in order to authorize the Pennsylvania Labor Relations Board to conduct representation elections, despite the fact that 43 P.S. § 211.3(c) of PLRA expressly excluded "public employers" from its definition of employers. *Act III employees are excluded from PERA because policemen and firemen do not have the right to strike. However, Act III's strike prohibition will not be effected by reading Act III in pari materia with PERA to provide for mandatory arbitration of grievances.*

Finally, although the common pleas courts[5] currently resolves grievances which arise under Act III interest arbitration awards, the better procedure is arbitration of these grievances. Unlike the common pleas courts, labor arbitrators have an expertise in labor law, as well as experience in resolving labor disputes. Also, the arbitrator may have participated in drafting the Act III interest arbitration award, and he is in the best position to resolve interpretation disputes which may arise under the award.

Thus, the pleadings reveal that the issue in dispute concerns the proper interpretation of the interest arbitration award. Although Act III grants policemen the right to settlement of their grievances, the statute fails to provide for a grievance arbitration procedure. To avoid an absurd result, it is sensible to read Act III in pari materia with PERA and have the grievance proceed to arbitration pursuant to 43 P.S. § 1101.903. If the Borough refused to arbitrate the grievance, an unfair labor practice would result. 43 P.S. § 1101.1201(a)(5). If the policemen and the Borough submitted to mandatory arbitration of their grievances, but the Borough still refused to pay wages in accordance with the arbitrator's interpretation of the interest arbitration award, an unfair labor practice would occur. 43 P.S. § 1101.1201(b)(8). It is not until the PLRB determines that an unfair labor practice has occurred, does the common

---

5. *See e.g.; Flood v. Boro. of Canonsburg,* 28 Pa.Cmwlth. 248, 368 A.2d 348 (1977); *Darney v. Boro. of W. Mifflin,* 23 Pa.Cmwlth. 267, 351 A.2d 317 (1976).

pleas court have jurisdiction to enforce the PLRB's order preventing an unfair labor practice.

Therefore, I would dismiss the action and allow the employees to proceed with seeking grievance arbitration pursuant to 43 P.S. § 1101.903.