## Buggy v. Upper Providence Township

*Leonard V. Tenaglia,* for plaintiffs.
*Guy A. Messick,* for defendants.

SURRICK, *J.,* August 16, 1985 — Plaintiffs are four police officers for the Township of Upper Providence and the Delaware County Fraternal Order of Police, Lodge No. 27. Defendants are the Township of Upper Providence and the individual members of the Township Council. On August 5, 1983, plaintiffs filed a complaint in mandamus alleging that, from 1979 through 1983, individual plaintiffs were paid a salary which was calculated upon a basic wage which was less than that required by the Upper Providence Code and the various collective-bargaining agreements and arbitration awards entered into by the parties.

Plaintiffs' complaint alleges that four township police officers are receiving compensation in accordance with the proper basic wage calculation as set forth in the 1978-79 collective-bargaining agreement and as increased in each agreement or arbitration award since 1978-79 but that the compensation of the four individual plaintiffs is being calculated upon different basic wage figures which are less than that required under the 1978-79 agreement.

Plaintiffs allege that this creates three different levels of compensation for police officers in the township in violation of both the township code[1] and the various collective-bargaining agreements and arbitration awards. Plaintiffs' complaint requests that this court direct the Township of Upper Providence to correct the situation.

On October 11, 1983, defendants filed an answer to plaintiffs' complaint containing new matter in which they allege that there are two classifications of police officers in Upper Providence Township, senior officers and junior officers, and that all officers within each classification receive the same pay scale. Defendants allege that no pay scale was ever established by any of the collective-bargaining agreements or arbitration awards between the parties, rather that these agreements and awards simply provided for annual incremental increases in salary. Defendants allege that the 1978-79 collective-bargaining agreement did not establish a basic wage for all Upper Providence Township police officers upon which future compensation would be calculated but rather that the basic wage referred to in the 1978-79 agreement is the "basic wage of a patrolman *at maximum*. . . ."[2] Defendants further allege that the classification or discrepancy between

---

1. Article IV, Section 2-23A of the Upper Providence Township Code provides:

"There shall be classification of all positions according to duties and responsibilities in the Township of Upper Providence. Each position shall be assigned to a job class on the basis of its duties and responsibilities. All positions in the same class shall be sufficiently alike to permit the use of singular descriptive title, the same qualification requirement, the same test for competency and the same pay scale."

2. The 1978-79 agreement does not define the term "at maximum."

junior and senior police officers is a term or condition of employment, a bargainable subject, to be addressed in the collective-bargaining process; that this subject was not addressed in collective bargaining until 1980, when it was addressed but not resolved by the arbitrators; and that this subject has not been raised again since 1980.

On October 20, 1983, plaintiffs filed an answer to defendants' new matter in which they allege that there is but one classification of police officers in the township, not two, and that officers in this one classification are being paid at three different levels. Plaintiffs also deny that the subject of the classification of police officers as junior and senior officers was ever the subject of collective bargaining.

On October 23, 1984, defendants, citing the case of Skiles v. City of Lancaster, 24 Commw. 580, 358 A.2d 131 (1976), filed a motion for summary judgment and/or judgment on the pleadings. In this motion, defendants allege that plaintiffs' action in mandamus to compel compliance with an ordinance which mandated equalization of salaries and compensation for police is improper and that the sole and exclusive method of determining wages, hours and working conditions of a police officer is by collective bargaining. In response to defendants' motion, plaintiffs filed a memorandum of law in which they concede that the motion for summary judgment should be granted.[3] At the same time,

---

3. Plaintiffs' memorandum of law argues, however, that plaintiffs are not resting their claim on Article IV, 2-23A of the Upper Providence Township Code, which requires that people in the same job classification must receive the same pay. Plaintiffs argue that their claim is based entirely upon a proper interpretation of the various agreements and awards and that the aforesaid provision of the code was simply cited in the complaint as evidence of the proper interpretation of the contract.

plaintiffs filed a petition requesting that the court refer this matter to binding arbitration, under the provisions of Act 111 of 1968, 43 P.S. §217.1 et seq. In both the petition and memorandum of law, plaintiffs cite the case of Chirico v. Board of Supervisors of Newtown Township, 504 Pa. 71, 470 A.2d 470 (1983), contending that the instant dispute is a dispute over the interpretation of the provisions of existing agreements and awards and thus should be dealt with in grievance arbitration.

In response to plaintiffs' petition, defendants filed a memorandum of law re: plaintiffs' motion to order arbitration. This memorandum raised two arguments. First, defendants argue that matters of wages, salaries and working conditions and, specifically, the classification of police officers for purposes of wage computation are matters which are to be dealt with exclusively in the collective-bargaining process. Defendants contend that the instant dispute is not a grievance dispute based upon a question of contract interpretation which would involve grievance arbitration. Rather, defendants contend that the present disagreement essentially involves matters which could have been but were not addressed and resolved in the collective-bargaining process. Second, defendants argue that, in any event, the Chirico case is not controlling in the instant matter. Defendants point to the fact that Chirico involved a dispute arising with regard to the interpretation of the provisions of an arbitration award. Defendants contend that Chirico can be distinguished from the instant case in that the instant case does not deal with the dispute arising from the interpretation of the provisions of an arbitration award and, therefore, Chirico has no application to this matter.

After a thorough review of the memoranda of law submitted by counsel and the applicable law, we concluded that the case of Chirico v. Board of Supervisors of Newtown Township, supra, is controlling. Accordingly, we entered two orders dated March 11, 1985, one granting defendants' motion for summary judgment and the other granting plaintiffs' petition to refer this matter to binding arbitration under the provisions of Act 111. Defendants have filed an appeal from the order referring this matter to arbitration thus necessitating this opinion.

The core of the controversy between these parties appears to be the inability of the parties to agree upon an interpretation of the language of section 1 of the collective-bargaining agreement of 1978-79. Section 1 provides as follows:

"1. *Wages and Cost of Living.* Beginning January 1, 1978, the annual wage for each officer shall be increased by $1,300 plus the percentage of increased cost of living as measured by the C.P.I. for Philadelphia for the twelve months ending October, 1977 that exceeds five percent. Said cost of living is incorporated in and shall become part of the basic wage. By way of illustration, the basic wage of a patrolman at maximum on January 1, 1978, will be computed as follows:

| | |
|---|---|
| 1977 Basic Wage | $14,393.00 |
| 1978 General Wage Increase | 1,300.00 |
| Cost of Living Increase (assuming hypothetically that during 12 months ending October 1977, the cost of living increase is six percent | 156.93 |
| TOTAL WAGE | $15,849.83" |

Nowhere in the agreement of 1978-79 or any subsequent collective-bargaining agreements or arbitration awards is the term "basic wage" defined. Moreover, nowhere in any of the relevant agreements and awards is the phrase "basic wage of a patrolman *at maximum*" given meaning. Anyone reviewing the relevant agreements and awards is left to guess as to how to compute the basic wage of a police officer in Upper Providence Township. Plaintiffs contend that a proper interpretation of section 1 is that as of 1977 the basic wage for all patrolmen in Upper Providence was $14,393 and that salary computation for the years 1978 thru 1983 should be based upon that basic wage. Defendants contend that the figure of $14,393 is merely illustrative and does not represent the basic wage of all patrolmen as of 1977; rather it represents the basic wage of a patrolman *at maximum*.

Adding to the confusion is the fact that plaintiffs contend that there is only one classification of police officers in Upper Providence Township and that they are being paid at three different levels. Defendants contend that there are two classifications of police officers and that the officers in each classification are receiving the same pay scale. We can find nothing in any of the collective-bargaining agreements or arbitration awards which discuss the classification of police officers. It is apparent from the pleadings, however, that the police officers are being paid at three different levels. (See plaintiffs' complaint, paragraphs 14 and 15, and defendants' answers thereto.)

After reviewing the matter, we concluded that the subject agreements and awards are ambiguous. At the very least, the questions of what constitutes the basic wage of a police officer in Upper Providence Township, and what is meant by the term "at maxi-

mum" in section 1 of the 1978-79 agreement, are questions which require interpretation of the various contracts and awards.

In the case of Chirico v. Board of Supervisors of Newtown Township, supra, our Supreme Court discussed the proper forum for settlement of disputes arising from the language in arbitration awards entered as a result of impasse arbitration under Act 111, 43 P.S. §217 et seq. The case involved, inter alia, a dispute over the meaning of the term "vacation week" in an arbitration award. The matter came before the lower court on a complaint in mandamus and the lower court placed its interpretation upon the term. The Supreme Court reversed the lower court and directed that the matter be referred to arbitration stating the following:

"A dispute over the interpretation of a provision in an existing award falls within the ambit of grievance arbitration. See Geriot v. Council of Borough of Darby, 491 Pa. 63, 417 A.2d 1144 (1980). Grievance disputes are properly handled within the framework of §1 of Act 111, which provides that "(Employees) shall have the rights to an adjustment or settlement of their grievances, or disputes in accordance with the terms of this act." Act 111 does not set forth the specific mechanism by which grievance, as compared with interest, disputes are to be arbitrated. We acknowledge it is clearly inadequate to recognize right "to a settlement of grievances or disputes," while failing to provide any method for the implementation of those rights. This obvious vacuum must not be countenanced. Yet resort to the courts to meet this need would contravene the strong affirmance of the use of non-adversarial methods for the resolution of disputes between governmental employers and police and firemen embodied in section two of the act.

"First, Act 111 specifically avoids the use of the courts for dispute resolution. This policy is so strong that section seven of the Act, 43 P.S. §217.7, provides for binding arbitration and contains the unique provision that '(n)o appeal therefrom shall be allowed in any court.' Thus the only method for settling grievance disputes allowable within the framework of Act 111 is arbitration. This objective would be completely frustrated if we were to superimpose, by judicial fiat, a layer of court intervention.

"Second, resort to arbitration is well supported by the surrounding circumstances of a grievance dispute. As was stated in Geriot v. Council of Borough of Darby, supra, at 77, 417 A.2d at 1148 (Nix, J. dissenting):

"(L)abor arbitrators have an expertise in labor law, as well as experience in resolving labor disputes. Also, the arbitrator may have participated in drafting the Act 111 interest arbitration award, and he is in the best position to resolve interpretation disputes which may arise under the award.

"Finally, we are convinced that arbitration is the proper forum for resolution of grievance disputes involving the interpretation of a provision of an award because the right sought to be enforced is not clear where there is an ambiguity. The trial court should not have ignored the expertise of arbitrators and defined the term 'vacation week' as used in the arbitration award."

We do not believe that the fact that Chirico involves a dispute over provisions of an arbitration award, rather than a dispute over the provisions of a collective-bargaining agreement, is of any moment. Although it is apparent that the law in this area has been going through a state of flux in the last few years, the one statement of policy that has remained

strong and constant in all of the decisions, is that courts should not intervene to resolve these disputes. If, as the cases suggest, the court should not intervene and if, as defendants suggest, Chirico has no application, except in disputes involving the interpretation of provisions of arbitration awards, then plaintiffs in the instant case are left without a remedy. We do not believe that this result was intended nor can it be countenanced. Our position, in this regard, is supported by the recent case of Township of Moon v. Police Officers of the Township of Moon, 83 Pa. Commw. 14, 477 A.2d 29 (1984) in which the Commonwealth Court stated the following:

"We must begin by saying that the judicial view on the propriety of grievance arbitration under Act 111 has evolved in recent years. The Township may no longer rely upon Allegheny County Firefighters v. County of Allegheny, 7 Pa. Commw. 81, 299 A.2d 60 (1973), and its progeny, for the holding that a grievance procedure is not a proper subject for arbitration under Act 111. The recent decision by our Supreme Court in Chirico v. Board of Supervisors for Newtown Township, 504 Pa. 71, 470 A.2d 470 (1983), is clear. "(T)he only method for settling grievance disputes allowable within the frame work of Act 111 is arbitration." Id. at 79, 470 A.2d at 475. Nor do we think it is significant that the grievance procedure in the instant case was provided by an arbitration board rather than having been written into a contract by the parties. The result is the same: A grievance dispute must be settled by arbitration and not by the courts. An arbitrator may properly order the parties to do that which they could do voluntarily when they contract; i.e., provide an arbitration procedure for the settlement of grievances. . . ."

If the only method of settling grievance disputes within the framework of Act 111 is arbitration and if

the grievance procedure can be either agreed upon by the parties in the collective-bargaining process or imposed upon the parties by an arbitrator, we see no reason why this court should not refer this grievance dispute to arbitration for resolution.

For these reasons, we entered the order of March 11, 1985.