**Tubbs v. Borough of Union City**

C.P. of Erie County, no. 14169-1994.

*Charles D. Agresti*, for plaintiff.
*Daniel J. Kuhn*, for defendant.

LEVIN, *J.*, November 7, 1994—On August 11, 1994, the plaintiff, Marvin W. Tubbs, filed a complaint in

mandamus against the defendant, the Borough of Union City, seeking to compel the defendant to fulfill a term of the employment contract with plaintiff by amending its pension ordinance. The amendment would permit Tubbs to buy back into the pension plan his seven years of prior service as a police officer with the borough. Tubbs claims that the buy-back, without interest, is a valid and enforceable term of his employment contract with defendant.

On the same date, Tubbs filed a motion for peremptory judgment and the court issued an order granting a rule to show cause on said motion. A hearing was then held on September 9, 1994, where the court granted the parties ample time to present evidence. The parties chose to present the matter to the court by stipulations without further presentation of evidence. Additional stipulations were filed on November 2, 1994. The parties also waived oral argument on their briefs. At no time has either party requested an opportunity to present additional evidence. As such, the record is now closed and the court will address the merits of the case.

The following are the stipulations of fact which the parties entered into at the hearing:

(1) The plaintiff, Marvin W. Tubbs, is an individual employed by the defendant as the chief of its police department, having his office at 13 South Main Street, Union City, Pennsylvania 16438.

(2) The defendant, Borough of Union City, is a borough organized and existing under the laws of the Commonwealth of Pennsylvania, having its principal offices at 13 South Main Street, Union City, Pennsylvania 16438.

(3) On January 6, 1987, at a regular meeting of the borough council, the plaintiff was hired as the chief of police of the borough effective January 7, 1987.

(4) The minutes of the borough council meeting on January 6, 1987 are contained in a report which states:

"Councilman Green reported he had met with the committee to study the feasibility of hiring Marvin Tubbs as full-time police chief. The committee reported, unanimously, that their decision was to appoint Marvin Tubbs full-time police chief of the Borough of Union City.

"Recommendations:

"Number one, the chief will not enroll in the borough's health care plan.

"Number two, the chief wishes, if it is allowable, to buy back into his police pension plan which he withdrew from previously.

"Number three, the chief wishes to have two weeks vacation immediately effective.

"Number four, the chief has submitted a five-year commitment to stay on in writing.

"Motion on appointment: It was moved by Councilman Green and seconded by Councilman Parkin that Marvin Tubbs be appointed full-time police chief, as part of management, at an annual salary of $18,300, effective January 7, 1987. Motion carried."

(5) As conditions of employment of the plaintiff, the plaintiff and borough council agreed, per the recommendation of the personnel committee of the council, that:

(a) The plaintiff would waive his right to participate in the borough's health care plan.

(b) The plaintiff, at his request, would be permitted to buy back into the police pension plan the seven years of prior service as a police officer with the borough, if the same were permitted under Act 600.

(c) The plaintiff would be provided with two weeks vacation effective during his first year of employment.

(d) The plaintiff would commit himself to employment for a period of five years.

(6) The plaintiff and the defendant fulfilled three of the four conditions of the plaintiff's employment, as stated above in paragraph 5(a), (c) and (d).

(7) Following the plaintiff's completion of five years of employment with the borough, on or about January 7, 1992, the plaintiff requested the borough secretary to inquire of the cost and feasibility of his paying into the pension fund an amount necessary to credit him with the seven years of prior service with the borough police department.

(8) At diverse times from January 1992, through April 6, 1994, the actuary employed by the defendant, Mockenhaupt, Mockenhaupt, Cowden & Parks Inc., reported to the defendant in response to inquiry by the borough's secretary, Cheryl R. Capela, that the plaintiff's purchase of his prior years of service was permissible under Act 600, and further that the pension fund was actuarially overfunded to such an extent that the credit to the plaintiff of his prior seven years of service could be done at no cost to the plaintiff, or at a cost equal to the amount of the plaintiff's pension contributions previously withdrawn, with or without interest.

(9) On April 6, 1994, at a special meeting of the borough council upon motion duly passed, the solicitor of the borough was directed to prepare an ordinance amending the original ordinance no. 877 by which the police pension fund was created, and under which it functions; the amendment said: To allow the employees of the police department to buy back into the police pension plan within two years.

(10) On June 14, 1994, upon motion duly made, borough council ordinance no. 964, amending council ordinance no. 877 (the Police Pension Fund Ordinance) was passed by a vote of four in favor of the motion, and two against.

(11) On June 15, 1994, Raymond E. Whitney Jr., mayor of the borough, vetoed ordinance no. 964.

The additional stipulations of facts filed on November 2, 1994, are as follows:

(1) Prior to January 7, 1987, the plaintiff was employed by the borough in a *part-time* capacity as chief of police.

(2) The plaintiff and representatives of the borough, prior to January 7, 1987, entered into negotiations regarding the terms and conditions of his employment as a *full-time* police officer.

(3) In addition to the salary to be paid the plaintiff as a full-time chief, there were four other terms or conditions of the contract, including the right of the chief to buy back seven years of prior service and have them included in his pension plan which he withdrew from previously, "if it is allowable."

(4) The term "if it is allowable," as it pertains to the plaintiff's right to buy back into his pension plan,

referred to the plaintiff's right to have added to his years of service, the seven years of service as a full-time police officer in the borough, if the same were authorized under Act 600, 53 P.S. §767.

(5) The terms and conditions of the plaintiff's employment as a full-time police officer were tentatively agreed upon by the plaintiff and a committee of the council of the borough, subject to formal approval by the full council.

(6) The report of the committee of the borough council relative to its negotiations of the terms and conditions of employment of the plaintiff, and the tentative agreement thereon, was made to the borough council by William C. Green Jr. on January 6, 1987.

The only pleadings before the court are Tubbs' complaint in mandamus, Tubbs' motion for peremptory judgment, and Tubbs' motion for attorney fees. Borough council essentially approved plaintiff's request by refusing to defend the instant action. On the other hand, the mayor, on his own, has asked to participate in the proceeding. Inasmuch as Tubbs has essentially asked the court to invalidate the mayor's veto, the mayor has a vital interest in the outcome of this case. Although there may be some question as to whether the mayor is entitled to become a party of record, the court will allow the mayor to participate in this action.

In analyzing the relief sought by Tubbs, it is necessary to review the requirements in an action for mandamus. In a mandamus action, peremptory judgment may be entered if no factual issues exist and the plaintiff's right to such judgment is clear. Pa.R.C.P. 1098; *Equitable Gas Co. v. City of Pittsburgh*, 507 Pa. 53, 488

A.2d 270 (1985). "The extraordinary writ of mandamus may compel the performance of a ministerial act or mandatory duty only 'where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate and adequate remedy.' " *DeBald v. McCarthy*, 87 Pa. Commw. 408, 413, 487 A.2d 460, 463 (1985). The remedy of mandamus has been granted against a municipality where there is a clear contractual right, arising out of a collective bargaining agreement, to be enforced. *Geriot v. Council of Borough of Darby*, 491 Pa. 63, 417 A.2d 1144 (1980). Further, the performance of legal duties is properly compelled by mandamus even where the existence and scope of such duties must be found and defined in the course of the mandamus action itself. *Delaware River Port Authority v. Thornburgh*, 508 Pa. 11, 20, 493 A.2d 1351, 1355 (1985).

Therefore, the court must initially determine whether Tubbs has a clear contractual right to buy back into the pension fund. The mayor claims that the buy-back provision is ambiguous and incomplete, and thus unenforceable where borough council did not specify the details concerning the buy-back. Based on this alleged incomplete term, the mayor asks the court to deny Tubbs' relief in mandamus and allow the parties to return to negotiations for completion of the employment contract.

By stipulation, the mayor has agreed that an employment contract was entered between Tubbs and borough council, and that the buy-back was a condition of Tubbs' employment. The mayor thus does not dispute Tubbs' right to buy back into the pension fund. Instead, the mayor disputes Tubbs' right to do so without the payment of interest on the amount previously withdrawn

from the pension fund by Tubbs. The mayor claims that the failure to pay interest will result in a gift of interest to Tubbs.

The court, as a matter of law, determines the existence of an ambiguity in a contract. *Hutchison v. Sunbeam Coal Corporation*, 513 Pa. 192, 519 A.2d 385 (1986). The mere existence of differing contractual interpretations by contracting parties does not render a contract ambiguous. *Krizovensky v. Krizovensky*, 425 Pa. Super. 204, 624 A.2d 638 (1993), *alloc. denied*, 536 Pa. 626, 637 A.2d 287 (1993). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison, supra* at 201, 519 A.2d at 390.

As a matter of law, the court finds that the contract in the instant action is clear and unambiguous. By stipulation, the mayor has agreed that a contract was entered into between Tubbs and the borough council on January 7, 1987. The buy-back provision clearly provides that Tubbs would be permitted to buy back into the pension plan, if the same were permitted under Act 600. Had borough council wanted the interest to be repaid at the time of the buy-back, they could have so specified in the contract. Its omission does not render the contract ambiguous, but instead reflects what was agreed to by the parties and as drafted by the borough council. It would be highly improper at this time to allow the parties to explain their intent by parol evidence when the contract itself is definite and unambiguous as to the terms of the agreement. Where parties have made their contract, the function of the court is to interpret it and enforce it as it has been written and not write into it terms not contained therein. *Walker v. Saricks*,

360 Pa. 594, 63 A.2d 9 (1949). As such, the court will not read into the contract a term not included by the parties and a term which would favor the drafters.[1] Instead, the court will give effect to the term as written by the parties. See *McMahon v. McMahon*, 417 Pa. Super. 592, 612 A.2d 1360 (1992). For that reason, the court will enforce the instant contract as written and not require the payment of interest where it was not so provided for in the contract.

In addition, interest is only due upon the making of a loan. See *In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47 (1987). Here, the funds withdrawn by the plaintiff do not constitute a loan. The funds were contributions previously made by Tubbs and not funds of the borough. If no loan was made to plaintiff, then no interest is owed unless it was agreed to by the parties, which was not the case here.

Further, the court rejects the mayor's argument that negotiations between the parties should be reopened to specify the details of the buy-back at this late stage. It has been over seven years since Tubbs and borough council negotiated the terms of Tubbs' employment. These terms were approved by a majority vote of the borough council members present at the meeting. Until now, the contract was not objected to nor vetoed. For the past seven years, the parties have lived under the agreement. Three of the four terms of employment have already been fulfilled. The buy-back provision is the only term which remains executory. The time for ne-

---

1. Even though the court sees no ambiguity, if such ambiguity existed, it would be construed against the drafter, the borough council. See *Rusiski v. Pribonic*, 511 Pa. 383, 515 A.2d 507 (1986).

gotiation or disavowal of this contract term has long since passed. Where Tubbs has worked for seven years under the clear and unambiguous terms of the contract, it is only fair and just that he now be allowed to obtain the fruits of his hard labor.

Since the writ of mandamus lies only to compel the performance by public officers of a ministerial or mandatory duty, *Delaware River Port Authority v. Thornburgh, supra* at 20, 493 A.2d at 1355, the final issue is whether the act that Tubbs is seeking to compel, qualifies as a ministerial or mandatory duty of a public officer which mandamus can compel. "The writ cannot be used to control the exercise of discretion or judgment by a public official . . ., [and] to review or compel the undoing [such] action taken by such an official . . . in good faith and in the exercise of legitimate jurisdiction . . . ." *Pennsylvania Dental Association v. Commonwealth, Insurance Department,* 512 Pa. 217, 227, 516 A.2d 647, 652 (1986). A court issuing a writ of mandamus may direct the exercise of discretion, but not the performance of a particular discretionary act. *Philadelphia Newspapers Inc. v. Jerome,* 478 Pa. 484, 387 A.2d 425 (1978).

Under the borough code, the mayor has the right to veto the borough council's actions which are legislative in nature. See 53 P.S. §4600 et seq. If the act, as alleged by Tubbs, qualifies as "non-legislative," then it need not be submitted to the mayor for approval. Payment into and withdrawing from the pension fund by a police officer are obviously administrative functions. As such, Tubbs' purchase back into the pension fund can be considered an administrative function, which would not require the mayor's approval.

Admittedly, the court could not order the borough or its public officers to pass an ordinance which provides for a general policy of buying back, without interest, into the pension fund. See *El Concilio Appeal*, 86 Pa. Commw. 219, 228, 484 A.2d 817, 821 (1984). For that reason, this court will not invalidate the mayor's veto of the amendment to the pension ordinance. Yet in this case, the court can compel the borough to exercise its discretion to fulfill the terms of the contract it entered into with Tubbs and only require Tubbs to pay back the amount previously withdrawn without any additional payment of interest. Inasmuch as this opinion requires the defendant to perform an administrative act, mandamus is the only appropriate remedy. Thus, for all the foregoing reasons, the court grants Tubbs relief in mandamus.

One final issue the court must address is plaintiff's motion for attorney fees. The plaintiff has made this motion based on 42 Pa.C.S. §2503(6) and (7) which provides for the awarding of counsel fees as follows:

"(6) Any participant who is awarded counsel fees as a sanction against another participant for violation of any general rule which expressly prescribes the award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of any matter.

"(7) Any participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter."

For Tubbs to be entitled to attorney fees, the court would have to find that the mayor's conduct was dilatory, obdurate or vexatious. The mayor, as noted earlier, has

a vital interest in the outcome of the case. He also raised an interesting argument about the payment of interest on which the court is required to make a legal determination. Although the court has ruled in favor of Tubbs, the mayor, in raising this contention, was not acting in a dilatory, obdurate or vexatious manner. Sanctions are therefore not warranted in the instant case.

## ORDER

And now, November, 7, 1994, it is hereby ordered, adjudged and decreed that the Borough of Union City, through its borough council, perform the ministerial act of allowing plaintiff to buy back into Union City's police pension fund by paying back without interest the amount withdrawn from said account. Further, Tubbs' motion for counsel fees as additional sanctions is hereby denied.