Christian *v.* Johnstown Police Pension Fund
Association, Appellant.

Argued March 22, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Edward G. Kuyat, Jr.,* with him *Franke, Ayres, Hager & Kuyat,* for appellant.

*G. Harry Isaacson,* for appellee.

OPINION BY MR. JUSTICE COHEN, April 19, 1966:

Six retired police officers of the City of Johnstown, including appellee, instituted an action in equity against the Johnstown Police Pension Fund Association (appellant) seeking, in addition to their retirement pay based on one-half of their earnings at retirement, certain service increments in accordance with the Third Class City Police Pension Fund Law, Act of June 23, 1931, P. L. 932, §4303, as amended January 18, 1952, P. L. (1951) 2105, §1, 53 P.S. §39303. Appellant named the City of Johnstown as additional defendant. The chancellor ordered that appellant and additional defendant pay to each plaintiff the amounts owing on service increments. The chancellor further ordered

that appellee be paid an additional sum representing back pension pay, which payment is separate and apart from any increment benefits. Following approval by the court en banc, appellant appealed only from the order in favor of appellee.

Appellee became a member of the Johnstown Police Force on May 18, 1927, and although below fifty years of age, became eligible for retirement on May 18, 1947, under the law then in force. He retired on January 7, 1952, earning $315 per month. On January 1, 1956 he was rehired by the police department, where he remained until his second retirement on March 15, 1959, at which time he was earning $391 per month. During the period of his first retirement (1952 through 1955), appellee received retirement pay of $157.50 per month.

During the 1951 session, the General Assembly approved an amendment to the Third Class City Police Pension Fund Law, providing in relevant part for an increment in pay for each police officer pensioned after having served the minimum number of years required for retirement allowance eligibility. The increment amounts to one-fortieth of the retirement allowance for each year the contributor has served beyond the minimum for retirement. The bill provided that it should become effective January 1, 1952. On January 18, 1952 the act was signed by the Governor of the Commonwealth.

Appellant contends that the amendment did not become effective until January 18, 1952 and that appellee, having retired prior to that date, is ineligible to receive benefits thereunder. Appellant is partially correct. The Statutory Construction Act, Act of May 28, 1937, P. L. 1019, §4, as amended, 46 P.S. §504 sets forth the effective dates of acts of the legislature. Appellant argues that the amendatory act affects the budget of the City of Johnstown and, accordingly, the

third paragraph of §4,[1] relating to laws affecting the budget of political subdivisions, should be referred to in order to determine the effective date of the amendatory act. Under the terms of that portion of §4, as it read when the amendatory act was enacted,[2] the effective date of the legislation in question would be January 18, 1952. We do not agree that there is here involved any budgetory legislation within the meaning of §4. Rather, it is our opinion that the first paragraph of that section, as it read on the date of enactment of the amendatory act,[3] properly establishes the

---

[1] "Laws affecting the budget of any political subdivision, enacted finally at a regular session of the Legislature, shall be in full force and effect at the beginning of the fiscal year of the political subdivisions affected following the date of the final enactment of such law unless a different date is specified in the law itself, or if enacted finally after the beginning of such fiscal year, or after the date specified in the law, the same shall become effective immediately upon final enactment."

[2] Section 4 was amended by the Act of May 27, 1953, P. L. 240, §1, 46 P.S. §504 (1965 p.p.), the relevant portion of which provides: "Laws affecting the budget of any political subdivision, enacted finally at a regular session of the Legislature, shall be in full force and effect at the beginning of the fiscal year of the political subdivisions affected following the date of the final enactment of such law unless a different date is specified in the law itself." Under its present provisions, the effective date of the amendatory act would be January 1, 1952. However, the amendment to the Statutory Construction Act is not apposite because pursuant to §56 of that act, 46 P.S. §556, "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature."

[3] This portion of §4 was also amended by the Act of May 27, 1953, supra n.2, and currently reads: "All laws hereafter enacted finally at a regular session of the Legislature, except laws making appropriations, and except laws affecting the budget of any political subdivision, shall be in full force and effect from and after the first day of September next following their final enactment, unless a different date is specified in the law itself, or if enacted finally after the first day of July of the year of the regular session, or after the date specified in the law, the same shall become effective sixty days after final enactment."

effective date, which likewise is January 18, 1952. That portion provided: *"All laws* hereafter enacted finally at a regular session of the Legislature, except laws making appropriations, and except laws affecting the budget of any political subdivision, *shall be in full force and effect* from and after the first day of September next following their final enactment, unless a different date is specified in the law itself, or *if enacted finally* after the first day of September of the year of the regular session, or *after the date specified in the law,* the same shall become effective *immediately upon final enactment."* (Emphasis supplied). Accordingly, when appellee retired for the first time on January 7, 1952 he was not entitled to service increments. The amendatory act did not, by its terms apply to appellee, and even if it had, appellee would have then been disqualified on constitutional grounds from receiving the increments. See *Koehnlein v. Allegheny County Employees' Retirement System,* 373 Pa. 535, 97 A. 2d 88 (1953). In *Koehnlein,* this Court held that an act which provided for an increased retirement allowance payable to "any beneficiary who has heretofore retired" was invalid as a violation of Article III, §11 of the Pennsylvania Constitution which prohibited any bill giving extra compensation to any public officer, servant or employee after his services had been rendered.[4] However, following his second retirement on

---

The court below concluded that this provision was controlling and that, pursuant thereto, the effective date of the legislation in question was January 1, 1952. The lower court is twice mistaken. First, the amended section is intended expressly to apply only to laws enacted after its own effective date. Secondly, even if that section were applicable, the amendment of 1952 would not have become effective until sixty days after its final enactment on January 18, 1952.

[4] That section of the Constitution was amended November 8, 1955 so as not to prohibit a bill increasing the retirement allowance of members of a retirement system for public employees.

March 15, 1959, appellee was entitled to both a service increment and an increased retirement allowance based on his earnings of $391 monthly at the date of his second retirement. Although the Third Class City Police Pension Fund Law, 53 P.S. §39302 prescribes a minimum period of *continuous* service of twenty years for retirement eligibility, there are no provisions concerning interrupted service once the minimum has been completed. In addition, there is no requirement of continuous service for eligibility for service increment benefits. We hold, therefore, that interrupted service following completion of the minimum has no effect on a member's right to receive service increment benefits. Accordingly, appellee, having served an additional seven years is entitled to a service increment equal to seven-fortieths of his second retirement allowance after March 15, 1959. Furthermore, since he was earning $391 per month on that date, he is entitled to one-half of that amount as his second retirement allowance.

From the foregoing discussion it would seem that we should modify the award to appellee in accordance with this opinion. There are, however, two insurmountable barriers. Appellant argues that the court below erred in awarding to appellee additional pension benefits other than service increments. Appellee's complaint in equity seeks relief solely for increment benefits. There is no prayer in the complaint for any further general relief. The pleadings do not suggest that his monthly pension of $157.50 is inadequate or that he is seeking any amount in excess of that retirement allowance, which represents one-half of his monthly salary as of his first retirement on January 7, 1952. As much as appellee may be entitled to more, as the pleadings presently read, he cannot be awarded any amount in excess of service increment benefits. It is the policy of our courts that: " 'A complainant can be afforded such relief only as he is entitled to *under the*

*allegations of the bill.* . . . The order or decree of a court of chancery should conform *to the prayer in the bill.* . . . Authorities need not be multiplied in support of the rule that the relief afforded by the decree must conform to the case *as made out by the pleadings,* and that it must be consistent with the relief prayed for.' " (*Snyder v. Barber,* 378 Pa. 377, 382-383, 106 A. 2d 410, 412 (1954) quoting from *Luther v. Luther,* 216 Pa. 1, 9, 64 Atl. 868, 870 (1906)). In *Ratkovich v. Randell Homes, Inc.,* 403 Pa. 63, 67, 169 A. 2d 65, 67 (1961), Justice JONES, speaking for a unanimous court, stated: "While it has been generally stated that relief in equity must be limited to the specific relief prayed for in the complaint (citing authority) yet, where there is a prayer for general relief, the rule enunciated by this Court in Meth v. Meth, 360 Pa. 623, 62 A. 2d 848 governs. In Meth we said (pp. 625, 626) : ' "Under the prayer for general relief, a decree which accords with the equities of the cause may be shaped and rendered; the court may grant any appropriate relief that conforms to the case made by the pleadings although it is not exactly the relief which has been asked for by the special prayer." ' " Since there is no prayer for general relief in appellee's complaint, any decree must be limited to the specific relief sought. It would seem then to be an easy matter for us merely to remand and allow appellee to file an amended complaint. We cannot, however, do that, for appellee's proper remedy was an action of mandamus to compel the performance by the appellant of its duty as a public body, or in assumpsit to recover money owing.

No appeal was taken from the decree of the lower court with regard to the other plaintiffs; accordingly, we make no determination thereon. The decree as to appellee is vacated and his action is remanded with directions that it be referred to the law court for determination in an action of mandamus or assumpsit

in accordance with the views herein expressed. Costs on appellant.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. Once the majority concludes, as it properly does, that the court below correctly determined that appellee was entitled to receive both retirement and service increments for the disputed period, there is no justifiable reason for vacating the decree entered below and remanding for referral to the law court. This Court should modify the decree to conform the amount awarded to the sum due appellee when calculated on the basis of his salary at the time of his second retirement and, with this modification, affirm.

Mr. Justice JONES joins in this dissenting opinion.