## Kellar v. Bracy

*James Kellar*, for plaintiff.
*James Diefenderfer*, for defendants.

KOCH, P. J., March 12, 1968.—Nancy D. Kellar, plaintiff in this amicable action in mandamus, is the widow of Robert W. Kellar, a former policeman em-

ployed by the City of Allentown, a third class city. Defendants are the members and governing body of the Allentown Police Pension Fund Association which attained legal status pursuant to provisions of The Third Class City Code, 53 PS §39301 and 53 PS §39306, and ordinance no. 6924 of the City of Allentown. Among the powers of the association is the determination of the eligibility of widows of policemen to receive pensions.

The issue before us concerns the qualification of plaintiff to receive a pension of "one-half of the eligible pension of a Patrolman or $1,530.00 per annum, payable bi-weekly, effective as of October 2, 1966".

The pleadings consist of a complaint, an answer, which admits each of plaintiff's factual averments, and defendants' motion for judgment on the pleadings.

Patrolman Kellar became a member of the police force of Allentown on October 8, 1953, and died of causes not related to his duties as a policeman on October 2, 1966. During his tenure as a full-time policeman he became a member of the Allentown Police Pension Fund Association, accepted the provisions of the ordinance relating to the association and made the required contributions to the fund. Nancy D. Kellar was married to the deceased patrolman on November 24, 1950, and the marital relationship existed at the time of death and also when the within action was instituted.

That mandamus will lie to compel the payment of a pension or retirement benefit is clear: Gianetta v. City of Allentown, 32 Lehigh 211; Christian v. Johnstown Police Pension Fund Association, 421 Pa. 240.

I.

The first contention of plaintiff is that she is entitled to the benefit on the ground that defendants, comprising the association, are obliged to make the demanded payment because it adopted a resolution

awarding the pension. Specifically, on January 5, 1967, pursuant to written application by counsel for plaintiff, the association adopted a resolution granting the widow's pension. Subsequent to the adoption of this resolution defendants failed to make the pension disbursements and ignored letters dated April 3, 1967, and April 7, 1967, by counsel renewing his demand for payment. At a meeting on May 4, 1967, attended by eight members of the association, the following resolution was presented:

"RESOLVED that the matter of carrying out of the motion as passed by the Allentown Police Pension Fund Association at a meeting held January 5, 1967 to pay Widow's Pension to Nancy D. Kellar, widow of deceased Policeman Robert W. Kellar, be referred to the City Solicitor for Court decision".

The vote on the foregoing resolution was four in favor and four against.

While it is not revealed in the pleadings we assume that after the association's original action those charged with making the payments* refused to comply with the resolution of January 5, 1967. We do not agree that the first resolution must be regarded as an estoppel. Such an interpretation would permit the members to award pension benefits regardless of limitations imposed by statute or ordinance. Plaintiff

---

* Section 1.01 of Ordinance No. 6924 is as follows: "Said Association shall consist of the Mayor, City Treasurer, City Clerk, whose memberships shall be concurrent with their tenure of office, two residents of the City of Allentown, one of whom shall be appointed by the Mayor of said City and one of whom shall be chosen by the police of said City, who shall serve for a period of three (3) years, or until their successors are named, and four (4) persons to be selected from among the Policemen of said City, two (2) of whom shall be selected in each year to serve for the period of two (2) years, said selectees to be chosen by the officers and employees of the Police Department who have accepted the provisions of this ordinance as hereinafter provided. . . ."

has not directed our attention to any case upholding her position and our own research has revealed none in Pennsylvania. However, a decision of the Indiana Supreme Court supports our view that defendants' original resolution was not a conclusive determination. In the applicable case, Kern v. State, 212 Ind. 611, 10 N. E. 2d 915, the court, referring to an action by a Pension Board held, page 616, 10 N. E. 2d 917: "The board, and its members, in respect to determining who are eligible, exercise only a ministerial duty in respect to a public fund, and cannot bind the fund for payments which are not permitted by the legislation which created and controls the disposition of the fund". In Hall v. Board of Firemen's Relief and Retirement Fund, 351 S. W. 2d 342, a decision of the Court of Civil Appeals of Texas, the board granted a pension to a widow and children but payment was withheld by the board after the board ascertained, subsequent to the granting of pension, that plaintiff's husband died from cancer not contracted from the performance of his duties as a fireman and thereupon withheld payments. Plaintiff in that case argued that the original award was final and irrevocable and established irrevocable rights to plaintiff. That court denied plaintiff her relief and said, at page 345:

"We hold the Board had the right to contest appellants' right to benefits even though its order allowing them had not been formally set aside. When the Board's order allowing the benefits was introduced by appellants, a prima facie case was made out. The burden was then on the Board to show there was no substantial evidence to support the order".

We subscribe to the principle, and defendants agree with this view, that the burden is upon the association to demonstrate that plaintiff is not entitled to the benefits. To determine this question we are obliged to examine the pertinent legislation.

## II.

The specific question may be stated as follows: Is the widow of a policeman who was employed as such by a Third Class City and died not in the line of duty at a time when he was less than 50 years of age and had less than 20 years of service as a policeman entitled to a pension from the Police Pension Fund Association established by such Third Class City for its policemen?

Our decision in this case requires an analysis of the police pension fund statutes which originated in 1931 with the enactment of The Third Class City Code, of June 23, 1931, P. L. 932; 53 PS §35101, et seq.

Section 4301 of The Third Class City Code, supra, 53 PS §39301, provides as follows:

"Section 4301. Police Pension Fund; Direction of: Cities shall establish, by ordinance, a police pension fund, to be maintained by an equal and proportionate monthly charge against each member of the police force, which shall not exceed annually three per centum of the pay of such member; which fund shall be under the direction of council or committed to the direction of such officers of the city as may be designated by council, and applied, under such regulations as council may, by ordinance, prescribe, for the benefit of such members of the police force as shall   receive honorable discharge therefrom by reason of age or disability *and the families of such as may be injured or killed in the service*, but such allowances as shall be made to those who are retired by reason of the disabilities of age shall be in conformity with a uniform scale". (Italics supplied.)

It is clear, then, that originally the legislature provided pension rights in two categories: (1) Policemen who receive honorable discharges by reason of age or disability and, (2) families of such as may be injured or killed in the service.

Section 4302, 53 PS §39302, provides that the ordinance referred to in section 4301, supra, "shall prescribe a minimum period of continuous service not less than twenty years, and, when any minimum age is prescribed, a minimum age of fifty years, after which members of the force may retire from active duty. . . ."

In 1959 the legislature extended widow's and family benefits through an amendment to section 4301, Act of July 27, 1959, P. L. 569, 53 PS §39301. For purposes of clarity we shall recite in full this legislation, the pertinent portions appearing in italicized form:

"Cities shall establish, by ordinance, a police pension fund, to be maintained by an equal and proportionate monthly charge against each member of the police force, which shall not exceed annually three per centum of the pay of such member; *and if council elects, by ordinance, to make such payments, an additional amount, not to exceed one per centum, if deemed necessary by the council to provide sufficient funds for payments to widows of members retired on pension or killed in the service;* which fund shall at all times be under the direction and control of council but may be committed to the custody and management of such officers of the city or citizens thereof, or corporations located therein, as may be designated by council, and applied, under such regulations as council may, by ordinance, prescribe, for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age or disability, *widows of retired members if council so elects,* and the families of such as may be injured or killed in the service, but such allowances as shall be made to those who are retired by reason of the disabilities of age shall be in conformity with a uniform scale, . . ." (Italics supplied.)

It is significant that the same act, in section 4303, 53 PS 39303, provides the following:

"(c) *If council elects, by ordinance, to make such payments, the widow of a member who retires on pension or is killed in the service on or after January 1, 1960, shall, during her lifetime or so long as she does not remarry, be entitled to receive a pension calculated at the rate of fifty per centum of the pension the member was receiving or would have been receiving had he been retired at the time of his death*". (Italics supplied.)

The foregoing provision granting optional rights to the city with reference to making payments to widows was amended by the Act of September 1, 1965, P. L. 462, making mandatory such payments. In its present form the legislation, 53 PS §39301 and 53 PS §39303 (c), is as follows:

"POLICE PENSION FUND; Direction of:—Cities shall establish, by ordinance, a police pension fund, to be maintained by an equal and proportionate monthly charge against each member of the police force, which shall not exceed annually three per centum of the pay of such member and an additional amount not to exceed one per centum of the pay of such member to be paid by such member or the municipal corporation if deemed necessary by the council to provide sufficient funds for payments required by subsection (c) of Section 4303 to widows, or if no widow survives or if she survives and subsequently dies or remarries, then to the child or children under the age of eighteen years, of members of the police force or of members retired on pension; which fund shall at all times be under the direction and control of council but may be committed to the custody and management of such officers of the city or citizens thereof, or corporations located therein, as may be designated by council, and applied, under such regulations as council may, by ordinance, pre-

scribe, for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age or disability, widows, or if no widow survives or if she survives and subsequently dies or remarries, then to the child or children under the age of eighteen years, of members of the police force or of members retired on pension if council so elects; but such allowances as shall be made to those who are retired by reason of the disabilities of age shall be in conformity with a uniform scale, together with service increments as hereinafter provided. Any compensation paid to a corporate custodian of the police pension fund shall be paid from the general fund of the city".

"ALLOWANCES AND SERVICE INCREMENTS . . . (c) *The widow of a member of the police force* or a member who retires on pension who dies, or if no widow survives or if she survives and subsequently dies or remarries, then the child or children under the age of eighteen years of a member of the police force or a member who retires on pension who dies on or after the effective date of this amendment, *shall, during her lifetime or so long as she does not remarry in the case of a widow* or until reaching the age of eighteen years in the case of a child or children, *be entitled to receive a pension calculated at the rate of fifty per centum of the pension the member was receiving or would have been receiving had he been retired at the time of his death*". (Italics supplied.)

The rights to police pensions and the widow's benefits, together with the procedural details, are embodied in Allentown's ordinance no. 10849, bill no. 235-1965, enacted on November 23, 1965. In general, this ordinance embodies the legislative language and, consequently, further reference to its provisions is not required in order to determine the question before us.

One of the contentions of plaintiff is that the titles to the various amending statutes indicate that plain-

tiff is entitled to the benefits. Without delving into the details of this position we believe it sufficient to cite Wiley v. Umbel, 355 Pa. 206, which held that titles do not control although titles may be used in the construction of the statutes.

Plaintiff also maintains that the legislation and the ordinance requiring policemen to pay into the fund an additional one percent of their salary requires us to hold that widows are entitled to benefits *regardless* of the cause of death of policemen or the period they may have served. The simple answer to this is that the legislation does not permit such an interpretation.

It is also contended that if we were to adhere to the defendants' logic the widow of a policeman killed in the line of duty would not be eligible. The question of eligibility of a widow whose policeman husband was killed in the line of duty before being eligible for retirement is not before us but, in any event, ordinance no. 6924 in section 4:04 provides, in part, as follows: "If any such officer or employee be killed or be so injured that he die from the effect thereof, while in the actual performance of his duty, his widow, so long as she remains his widow, shall be entitled to receive a pension equivalent to one-half ($\frac{1}{2}$) of his salary received by him at the time of his death. . . ."

In essence plaintiff would interpret the present legislation to require the payment of a pension to a widow regardless of the cause of death or whether at the time of his death he had been retired or eligible for pension. We are convinced that this is not a proper interpretation of the statutes; that the legislature did not intend such a result particularly in light of the fact that retirement and pension plans are based on the theory of an adjusted compensation for time and service, payable in the future: Retirement Board of Allegheny County v. McGovern, 316 Pa. 161; Altieri v. The Allentown Officers' & Employees' Retirement

Board, 368 Pa. 176. We are also mindful of article IV, section 51 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, which provides that the legislature does not intend a result that is absurd, impossible of execution or unreasonable.

The legislative intent that widows in plaintiff's category are not entitled to the benefits claimed is evidenced in section 4308, 53 PS §39308, providing for repayment before retirement. The relevant portion of that enactment provides: "In the event of the death of a member of the police force not in the line of service before the member becomes entitled to the pension aforesaid, the total amount of contributions paid into the pension fund by the member shall be paid over to his estate".

We conclude that the legislature did not intend to benefit those in the class of plaintiff and that it specifically provided in the present act, 53 PS §39303(c), that "the widow of a member of the police force . . . shall . . . be entitled to receive a pension calculated at the rate of fifty percentum of the pension the member was receiving or would have been receiving had he been retired at the time of his death". Accordingly, plaintiff is not entitled to the benefits she demanded and the original action of the governing body of the Allentown Police Pension Fund Association in granting the same was not in accordance with the applicable statutes or ordinance no. 6924.

ORDER

Now, March 12, 1968, it is ordered that defendants' motion for judgment on the pleadings be granted.

It is further ordered, pursuant to Pa. R. C. P. 1034(b), that the proper officials of the City of Allentown pay unto the Estate of Robert W. Kellar the total amount of contributions paid into its pension fund by Patrolman Robert W. Kellar.