464 A.2d 446

**John FUDULA**

v.

**KEYSTONE WIRE & IRON WORKS, INC., and the First Pennsylvania Banking and Trust Company.**

**Appeal of KEYSTONE WIRE AND IRON WORKS, INC.**

Superior Court of Pennsylvania.

Argued March 17, 1983.

Filed Aug. 5, 1983.

See also 283 Pa.Super. 502, 424 A.2d 921.

Paul Aloysius Logan, Norristown, for appellant.

George B. Ditter, Ambler, for Fudula, appellee.

George C. Corson, Jr., Norristown, for First Pa., appellee.

Before CERCONE, President Judge, and CAVANAUGH and ROWLEY, JJ.

ROWLEY, Judge:

This is an appeal from a final decree in equity finding in favor of appellee The First Pennsylvania Banking and Trust Company (Bank), and requiring the payment of $23,309.48 in damages to Appellee John Fudula (Fudula) by Appellant Keystone Wire & Iron Works, Inc. (Keystone).

This is the second time this case has been before our Court on appeal. *See Fudula v. Keystone Wire & Iron Works*, 283 Pa.Super. 502, 424 A.2d 921 (1981) (*Fudula I*). In *Fudula I* the question of the Bank's and Keystone's liability to account to Fudula was at issue. Keystone contended that the trial court had erred in directing the reinstatement of Fudula as a member of the Keystone Pension and Retirement Plan (Plan) retroactive to 1962, and requiring a recalculation of his vested interest in the Plan together with an accounting of the sums due him. This Court, in *Fudula I*, affirmed the trial court and the case was returned to the Chancellor for an accounting and further proceedings. After proceeding as directed, the trial court entered a final decree as outlined above. This second appeal by Keystone followed.

> The scope of review of an appellate court in the consideration of an appeal from a final decree in an equity action is well established. A Chancellor's findings of fact, approved by the court en banc, are entitled to the weight of a jury's verdict and will not be reversed on appeal if supported by adequate evidence. See *McDole v. Duquesne Brewing Co. of Pittsburgh*, 281 Pa.Super. 78, 83, 421 A.2d 1155, 1158 (1980), and cases cited therein. The Chancellor's findings are afforded particular weight in cases in which the credibility of witnesses must be evaluated, as the Chancellor has had the opportunity to hear their actual testimony and to observe their demeanor on

the witness stand. See *Fascione v. Fascione*, 272 Pa.Super. 530, 416 A.2d 1023 (1979). We should not reverse on appeal unless it is evident that the lower court abused its discretion, lacked evidentiary support for its findings, or was capricious in its disbelief of evidence submitted. See *Davis v. Buckham*, 280 Pa.Super. 106, 421 A.2d 427 (1980); *Commonwealth ex rel. Powelson v. Powelson*, 277 Pa.Super. 220, 222, 419 A.2d 741, 742 (1980). The same principles apply when a single judge, rather than a court en banc, reviews the case. *Gilmore v. Northeast Dodge Co., Inc.*, 278 Pa.Super. 209, 420 A.2d 504 (1980). Therefore, we must examine the evidence of record in the instant case to determine whether any basis exists for a reversal of the lower court's findings and conclusions. *Sorokin v. Krasner*, 289 Pa.Super. 324, 327, 433 A.2d 88, 89–90 (1981).

On appeal Keystone raises three (3) issues. It avers that the trial court erred: (I) in finding that Fudula's interest in the Plan was 100% vested, (II) in awarding pre-judgment interest to Fudula, and (III) in "directing a verdict" in favor of the Bank. Upon review of the record, we have concluded that all three issues have been correctly decided by the trial court and need only be discussed here briefly.

## I

With respect to the first issue, Keystone argues that, under the terms of the Plan, Fudula's interest was not 100% vested because he voluntarily severed his employment with the company for a five-week period during 1965. Both the Chancellor and the court en banc addressed this issue and found that, while Fudula had briefly severed his employment with Keystone during 1965, he returned to his job at the iron works as a result of a conversation with the president of the corporation, Robert C. Robinson, who told him that, if he came back to Keystone, his five-week absence would be treated as vacation time and that none of his benefits would be affected. The Chancellor and the court en banc concluded that, based on these circumstances, Keystone was "estopped" from claiming that Fudula's five-

week absence in 1965 constituted a break in Fudula's continuous service under Article III E. and Article VIII D. of the Plan. As a consequence, the Chancellor and the court en banc found that Fudula, as an employee with ten years or more of *continuous* participation in the Plan, had a 100% vested interest therein. Keystone contends on appeal that the court below erred in holding that Fudula's interest was 100% vested based on a *theory* of estoppel which, appellant alleges, *was never pleaded* or proved by Fudula, but rather, was raised *"sua sponte"* by the court after trial. Keystone claims surprise and maintains that it was unaware that estoppel would be an issue, and that, as a consequence, it never had the opportunity to cross-examine the witnesses or present evidence respecting the 1965 conversation between Fudula and Robinson.

Initially, we note that in Pennsylvania we require *facts* to be pleaded and not theories. Therefore, the issue here is not whether the *theory* of promissory estoppel was pleaded, but rather, whether sufficient *facts* were pleaded and proved to permit the trial court to apply the theory of promissory estoppel as a basis for its decision. Our reading of the reproduced record supports the conclusion that sufficient facts were pleaded and proved to give notice to appellant that promissory estoppel was an issue. It was clear at the outset of this litigation, from the facts pleaded in Fudula's complaint, that he was averring his *continuous* participation in the Plan from 1959 to 1972, and that he believed his interest in the Plan to be 100% vested. At the hearing on the issue of Keystone's liability to account, Fudula testified about his 1965 break in employment, as well as his conversation with Robert C. Robinson, claiming that the agreement struck between him and Keystone's president, particularly with respect to benefits, supported his contention that he had never left the Plan and that he was a continuous participant from 1959 onward. Indeed, prior to eliciting testimony from Fudula about this conversation, Fudula's counsel indicated to the court, in response to Keystone's demand for an offer of proof, that testimony on the subject was being introduced because Fudula be-

lieved the events surrounding his leaving and returning in 1965 directly affected his status under the Plan. Keystone's counsel at the hearing conducted a detailed cross-examination of Fudula, and it is obvious from the exchange which occurred between Fudula and Keystone's counsel that appellant understood the significance that was attributed to the 1965 conversation. In light of that cross-examination and all the attending circumstances, appellant cannot now claim to have been unaware that estoppel was at issue or to be unaware of the implications the court could place on Fudula's conversation with Robinson. The trial court did not raise the theory of promissory estoppel *"sua sponte"* but rather applied that theory as a basis for relief on the facts pleaded and proved before it.

## II

Appellant next contends that the trial court abused its discretion by permitting Fudula to amend his complaint to add a provision for general relief, including thereunder a request for pre-judgment interest.[1] Specifically, Keystone argues (1) that the award of pre-judgment interest given Fudula violated the "rule" of *Christian v. Johnstown Police Pension Fund Association*, 421 Pa. 240, 218 A.2d 746 (1966), and (2) that, given the equities of the case, Fudula was not entitled to an award for pre-judgment interest. We find neither argument to be persuasive.

---

**1.** In its brief, Keystone states that Fudula did not actually request "pre-judgment interest," but rather, requested instead that he be awarded "delayed compensation for payment of the amount due [him] under the retirement plan." Keystone implies that by permitting the award of damages to include "pre-judgment interest," rather than "delayed compensation," the trial court has granted Fudula relief which he never specifically requested. We do not agree. Whatever the terminology, i.e. "pre-judgment interest" or "delayed compensation," the concept is the same, and we find no error on the trial court's part in interchanging the terms. There is also a statement found in Keystone's brief that, while the trial court allowed Fudula leave to amend his complaint, it denied a similar right to both Keystone and the Bank to amend their answers to include cross-claims against each other. While Keystone did raise the trial court's denial of its motion to amend as error in its written exceptions to the decree nisi, it has not pursued this particular allegation of error on appeal. Therefore, it has been waived.

 Pa.R.C.P. 1528 provides that, in an action for equity, a prayer for relief may be amended as of course at any time. Discretion to award pre-judgment interest in an action for equity rests with the Chancellor, and his final determination will not be disturbed on appeal unless there has been an abuse of discretion. *Sack v. Feinman*, 495 Pa. 100, 432 A.2d 971 (1981). Our review being thus limited, we cannot say that the Chancellor, as affirmed by the court en banc, abused his discretion either in permitting the prayer for relief to be amended, or in allowing an award for pre-judgment interest.[2]

## III

 Keystone's third and final contention is that the trial court erred in granting a "directed verdict" on behalf of the Bank since the Bank's liability had previously been determined by the trial court and that finding was affirmed on appeal by this Court in *Fudula I*.[3] We would agree that a trial court lacks the power to direct a verdict once the finder of fact has rendered its determination. *Smith v. Ehler*, 366 Pa. 111, 76 A.2d 865 (1950); *Bethay v. Philadel-*

2. In *Christian, supra,* retired city police officers brought an action in equity seeking, as relief, certain service increments in accordance with the Third Class City Police Pension Fund Law, Act of June 23, 1931, P.L. 932, art XLIII, § 4303, as amended January 18, 1952, P.L. 2105, § 1, 53 P.S. § 39303. The Chancellor, as affirmed by the court en banc, granted the requested service increments, adding thereto an additional sum of money representing back pension pay. The Supreme Court held that in equity actions the relief ordered must conform to the relief prayed for, and that, consequently, even though the officers were entitled to the additional pension payments, it was error to award the same where the complaint sought relief solely for increment benefits and contained no prayer for any further relief. In the case at hand, if Fudula had not requested leave to amend his complaint to include a general prayer for relief, and pre-judgment interest had been awarded gratuitously by the Chancellor, we might concede the applicability of *Christian, supra.* However, here Fudula did request an amendment, and pre-judgment interest was awarded by the Chancellor on the basis of that amendment.

3. Keystone and the Bank were represented by the same legal counsel until two months before the hearing on exceptions to the account.

*phia Housing Authority,* 271 Pa.Super. 366, 413 A.2d 710 (1979). Where, as in this case, the issue of liability was litigated first, and the judgment entered against both Keystone and the Bank was affirmed on appeal, any attempt to direct a verdict on the *issue of liability* would be particularly in error. Therefore, to the extent that the court below determined that no *liability* could be assigned to the Bank it erred. To the extent, however, that the court below determined that the Bank owed nothing further in the way of *damages* to Fudula, it did not err. *Fudula I* required that an accounting between the parties be submitted. The parties agree that the accounting, as submitted by the Bank, is accurate. The accounting shows that the Bank has paid Fudula everything *it* received on his behalf under the Plan from Keystone, plus interest, i.e. $2,733.95. Consequently, having received nothing further from Keystone, it owes nothing further to Fudula under the terms of the Plan. Fudula conceded as much in open court at the hearing on the issue of damages.[4] Since the Bank's obligation has been satisfied, the court below did not err in assigning to Keystone sole responsibility for the remainder of the damages owed.

Decree affirmed.

---

**4.** We note that Fudula did not address the issue of the Bank's directed verdict in its brief filed on appeal.