J-A01013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| PENN-AIRE AVIATION, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- |
| v. | |
| ADAPT APPALACHIA, LLC. | |
| Appellant | No. 565 WDA 2016 |

Appeal from the Judgment Entered April 12, 2016
In the Court of Common Pleas of Venango County
Civil Division at No(s): 2012 - 01252

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED JULY 26, 2017**

Adapt Appalachia, LLC ("Adapt") appeals from the April 12, 2016 judgment entered in favor of Penn-Aire Aviation, Inc. ("Penn-Aire").  After careful review, we affirm in part, reverse in part, and remand for a new trial limited to damages.

In early April 2012, Adapt's managing member, Lorenzo Cola, contacted Bruce Taylor, the President of Penn-Aire, about leasing space in the Hi-Tone Building located at the intersection of Otter and 12th Streets in Franklin, Venango County, Pennsylvania.  The parties met, and shortly thereafter, Mr. Taylor hired Ron Matthews of Matthews Construction and Painting to clean and renovate the building as Mr. Taylor had a "prospective tenant."  N.T. Non-Jury Trial, 8/11/15, at 73.

The record reflects that the premises had been occupied by a dry cleaner until November 2011.  The space had no heat or air conditioning.

\* Retired Senior Judge assigned to the Superior Court.

According to Mr. Matthews, the existing walls would have to be demolished and replaced to accommodate any tenant. In addition, although there was a bathroom on the premises, new plumbing and fixtures were required. Thus, a build out of the space was contemplated for any tenant.

After four or five meetings with Mr. Cola, Mr. Taylor sent him a letter dated April 30, 2012, proposing a three-year, triple net lease,[1] starting July 1, 2012, with an option to renew for two years, and a monthly rent of $3,000. Exhibit 10. Mr. Matthews met with Mr. Cola prior to applying for a building permit on May 1, 2012. He subsequently met with Mr. Cola and/or Mr. Ream, another member of Adapt, eight or ten times over the next few weeks to discuss Adapt's requirements for electrical, computer, and air conditioning. The contractor relayed that Mr. Cola requested soundproof windows, a level interior cement floor, and a new walk and ramp, all of which were installed after Mr. Taylor approved the expenditures. *Id*. at 78. Mr. Matthews' work was directed by Mr. Taylor. *Id*.

On or about May 10, 2012, Mr. Taylor asked his attorney, Henry W. Gent, III, Esquire, to prepare the lease. A draft lease was sent to Sterling Ream on May 15, 2012. The lease provided that "Prior to the Commencement Date, Lessor shall, at Lessor's sole cost and expense,

_____

[1] A triple net lease required lessee to pay one-third of taxes and insurance. Herein, taxes would amount to $282.88 and insurance would cost $703.66 per year.

renovate the Premises for use as business offices." That first draft, as well as successive drafts, also contained a provision that both parties were required to sign the lease in order for it to be effective. *See* Exhibit 2. Mr. Ream marked up the draft lease with suggested additions and changes and returned it.

Attorney Gent testified that when he first prepared the lease, he was unaware that Adapt expected a June 1, 2012 effective date, but a commencement date for payment of rent of August 1, 2012. In a June 5, 2012 email, Mr. Ream asked Attorney Gent when they should expect to receive the revised lease, and requested that, since they were past June 1, "which we thought would be the effective date," that he make the rent commencement date sixty days after the new effective date. Exhibit 3. A June 5 draft lease contained a floor plan for the interior space, but did not reflect a new commencement date. It was represented that the premises would not be ready for occupancy until August 1, 2012.

After Adapt offered additional comment on the proposed lease, another draft was prepared and forwarded to Adapt with correspondence dated June 12, 2012. On July 2, 2012, Mr. Cola advised Mr. Taylor that he was having trouble with the company and Adapt was not going to sign the lease. In response, Mr. Taylor did not suspend the renovations because Mr.

Ream's recent purchase of chairs and cubicles from him led him to believe that Adapt still intended to lease the premises.[2] After July 2, the parties' discussions resumed regarding the lease, and Adapt made some additional requests.

On July 10, Attorney Gent's paralegal forwarded a revised lease to Adapt, and noted in the cover email that the lease was modified to reflect that August and September would be rent-free and that the lease would begin on October 1, 2012. The email also related that Mr. Taylor had not reviewed the changes yet and that the revised lease was being sent to him at the same time. The correspondence concluded that, if Mr. Cola had any comments with regard to the revisions, he should let them know. Otherwise, he was asked to execute two originals and return them with a check for the security deposit.

Mr. Cola emailed additional suggested changes on July 17, 2012, one of which was a request for exclusive parking. After reviewing the suggested revisions with Mr. Taylor, Attorney Gent conveyed that parking would be on a non-exclusive basis, but assured Mr. Cola that there would be adequate parking to meet Adapt's needs. The attorney forwarded a revised lease

_____

[2] By certified mail dated July 6, Attorney Gent advised Adapt that the lease was agreed to and that Mr. Taylor had made significant improvements to the property requested by Adapt in reliance upon that representation. Adapt was unaware of the contents of that correspondence as it did not retrieve the certified mail, and the letter was returned to Attorney Gent.

consistent with that representation, and asked Mr. Cola to arrange for execution of the lease. Mr. Cola responded via email, "Okay thank you."

One week later, on July 25, Attorney Gent's office asked Mr. Cola and Mr. Ream to "advise when the attached Lease will be signed on behalf of Adapt. Subsequently, we will arrange for execution on behalf of Penn-Aire and return one original to you." *See* Exhibit 6 (Email 7/25/12, at 3). When Attorney Gent did not receive a response, he advised Mr. Cola and Mr. Ream via an August 1, 2012 email that "the leased premises are ready for occupancy and the renovations requested by Adapt have been completed." Exhibit 6. He recited therein that, since Penn-Aire had not received a security deposit from Adapt, Penn-Aire assumed that Adapt did not intend to lease the premises. Adapt did not respond.

Penn-Aire commenced this action by *praecipe* for writ of summons on September 26, 2012. In its January 16, 2013 complaint, Penn-Aire alleged that the correspondence between the parties, together with the unexecuted lease, formed the final lease agreement. It averred that Adapt breached the lease agreement by failing to pay rent due and owed and sought damages representing the rental payments. Penn-Aire also pled that, based on Adapt's express commitment to lease the premises, it was entitled to recover costs and expenses totaling more than $75,000 that it expended to renovate the premises to Adapt's specifications, together with attorney fees.

Adapt filed an Answer specifically denying that any agreements, written or otherwise, were reached. Answer, 2/15/13, at ¶8. Furthermore, Adapt denied that it demanded improvements and maintained that all negotiations regarding improvements to the premises were contingent upon a lease. It denied that it promised to lease the premises, that a final agreement was reached, or that a lease was ever entered into. *Id*. at ¶¶8, 9. Adapt maintained that unresolved issues led to the failure to finalize the lease, among them: the duration of the lease, the amount of the rent, and the availability of exclusive parking. In New Matter, Adapt pled, *inter alia*, that Penn-Aire had already commenced renovating the space at issue before Adapt inquired about leasing the space. It averred that there was no agreement as to the final terms of any lease, and any alleged oral agreement was barred by the Statute of Frauds.

Penn-Aire countered that the aforementioned issues were pretexts that were asserted only after the lawsuit was filed and never raised during the negotiations or communicated to Penn-Aire. Furthermore, Penn-Aire maintained that Adapt made very specific requests for the build out, which Mr. Taylor undertook in reliance upon Adapt's representations that it would lease the property.

At the non-jury trial, Mr. Taylor acknowledged that the premises required renovation in order to be suitable for any tenant, but maintained that the renovations were more elaborate than necessary. N.T. Non-Jury

Trial, 8/12/15, at 11. He testified that he would not have made these same improvements if he did not have an agreement for rent at $3000 per month for at least three years. *Id*. at 27. He also stated that he agreed to a later commencement date on the lease because Mr. Ream bought twenty-six call center cubicles that Mr. Taylor possessed in Oil City, which Mr. Taylor assumed would be used in the leased space, and which contributed to his "impression there would not be any problem on the lease." *Id*. at 22.[3]

At the close of Penn-Aire's case, Adapt moved for a non-suit "based on the fact that [Penn-Aire] has acknowledged and admitted that the situation was controlled by a written lease," that there were ongoing negotiations regarding the lease, that the lease provided that it was not effective unless executed by both parties, and it was not so executed. N.T., 8/12/15, at 35. In opposition, Penn-Aire argued that the parties had reached an agreement on the essential terms, as evinced in the emails and correspondence, and Adapt breached it. Penn-Aire argued further that Adapt's participation in the build out reflected an understanding and agreement that it was going to lease the premises. *Id*. at 36. Adapt countered that Penn-Aire could not use the build out as a rationale for why there was a lease. Furthermore, since Penn-Aire relied upon the lease as the essential agreement, and that

---

[3] Mr. Taylor assumed that the furniture was intended for the Venango County space, but the cubicles were actually purchased and installed in Adapt's Mercer County office. N.T. Non-Jury Trial, 8/12/15, at 23.

- 7 -

agreement required an executed lease in order to be effective, Adapt contended that Penn-Aire should not have commenced the build out without a signed lease. The court deferred its decision on the motion. The court similarly deferred its ruling when Adapt moved for a directed verdict on the same basis at the close of the evidence.

The trial court issued its findings on October 28, 2015. It found that there was no legally enforceable contract "as the negotiations were ongoing and . . . there were still significant issues that had not been agreed upon and terms would be changed." Findings, 10/28/15, at 1. The court looked at the language of the proposed lease, strictly construed the language against the drafter, Penn-Aire, and concluded "it was the intent of all parties throughout this process that until a full and final agreement had been reached and signed by all parties[,] that it was simply an offer and negotiations and the contract was not executed and created." *Id*. at 2. Nonetheless, the court found that Adapt's members "directed and requested significant alterations to the building to fit their needs[,] . . . that they were actively involved in the design and request for said alterations[,]" and that Penn-Aire relied on the indications that Adapt was going to lease the property. *Id*. at 2. The court found Adapt liable for all costs associated with the "build out" of the premises to suit Adapt's specifications and awarded $75,456.23 in damages, representing the entire cost of the build out, together with attorney fees.

Adapt filed a motion for post-trial relief seeking judgment n.o.v. (JNOV), a new trial, or a remittitur, which the court denied. Adapt appealed on April 18, 2016, timely filed its Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court issued its Rule 1925(a) opinion. Adapt presents two questions for our review:

1.      Whether the trial court erred in entering judgment in favor of Appellee/Plaintiff and against Appellant/Defendant, Adapt Appalachia, LLC in the amount of $75,456.23 based on a theory that the Appellee/Plaintiff, in making alterations to a commercial property, relied on Appellant/Defendant's indications that it was going to lease the property.

2.      Whether the trial court erred in entering judgment in favor of Appellee/Plaintiff for renovation costs where there was no evidence entered that allowed for separation of any renovation costs unique to the alleged requests made by Appellant/Defendant, from the renovation costs Appellee/Plaintiff would have incurred for any other tenant.

Appellant's brief at 4.

Adapt's first issue is a challenge to the trial court's refusal to grant JNOV on Penn-Aire's promissory estoppel claim. In reviewing the trial court's denial of JNOV,

we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

> ***Polett v. Public Communications, Inc.***, 83 A.3d 205, 211
> (Pa.Super. 2013) [(*en banc*)].

***Drake Mfg. Co., Inc. v. Polyflow, Inc.***, 109 A.3d 250, 258-59 (Pa.Super. 2015).

When reviewing a case tried by a judge sitting without a jury, we are limited to determining whether the trial court's factual findings are supported by competent evidence, and whether the court properly applied the pertinent law. ***See Prestige Bank v. Inv. Properties Group, Inc.***, 825 A.2d 698, 700 (Pa.Super. 2003). Those findings must be afforded the same weight and effect as a jury verdict, and will not be disturbed on appeal absent an error of law or an abuse of discretion. ***Id***. Furthermore, absent error or abuse of discretion, we are bound by the trial court's credibility determinations. ***See Viener v. Jacobs***, 834 A.2d 546, 554 (Pa.Super. 2003).

After concluding that there was no enforceable contract between the parties, the trial court found that "Adapt essentially promised to enter into the lease, through its communications and assistance in the pre-execution build out of the office." Trial Court Opinion, 6/3/16, at 5. The court reasoned that Adapt's "[a]ssisting in the build out would reasonably lead a party, such as Penn-Aire, to believe that Adapt intended on entering the lease." ***Id***. The only way to avoid injustice, according to the trial court, was

- 10 -

to enforce the promise to the extent of the renovations. Thus, liability rested on a promissory estoppel theory.

Promissory estoppel is a doctrine invoked when there is no enforceable agreement between the parties due to lack of consideration. To avoid injustice, the doctrine renders "enforceable a promise made by one party to the other when the promisee relies on the promise and therefor changes his position to his own detriment." Restatement (Second) Contracts § 90; **see**, **e.g**., **Shoemaker v. Commonwealth Bank**, 700 A.2d 1003, 1006 (Pa. 1997).

In order to maintain an action for promissory estoppel, "the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise." **Crouse v. Cyclops Indus.**, 745 A.2d 606, 610 (Pa. 2000) (quoting **Shoemaker**, **supra** at 1006).

In Pennsylvania, promissory "statements" must objectively evidence a sufficient commitment or assurance on which a reasonable person would rely. "The promisor is affected only by reliance which [the promisor] does or should foresee, and enforcement must be necessary to avoid injustice." **Paul v. Lankenau Hosp.**, 543 A.2d 1148 (Pa.Super. 1988) (*reversed on other grounds* 569 A.2d 346 (Pa. 1990)). "[M]isleading words, conduct or

silence by the party against whom the estoppel is asserted" constitute a sufficient "promise" to invoke the doctrine. ***Novelty Knitting Mills, Inc. v. Siskind***, 457 A.2d 502, 503 (Pa. 1983).

Preliminarily, Adapt contends that Penn-Aire did not plead or argue promissory estoppel in response to Adapt's motion for nonsuit or motion for directed verdict. Penn-Aire counters first that Adapt failed to preserve this claim in its motion for post-trial relief. Second, since Adapt's motions for nonsuit and directed verdict were directed solely to the issue of whether there was an enforceable lease agreement, Penn-Aire maintains that Adapt did not preserve entitlement to JNOV on the promissory estoppel claim.

The threshold issue before us is whether sufficient facts were pled and proved to apprise Adapt that promissory estoppel was at issue. ***See Fudula v. Keystone Wire & Iron Works, Inc***., 464 A.2d 446, 448 (Pa.Super. 1983) (noting facts, not theories, are to be pleaded, and finding sufficient facts pled to support court's application of promissory estoppel). A plaintiff is not obligated under the Pennsylvania Rules of Civil Procedure to state the legal theory or theories underlying his complaint. ***Del Conte v. Stefonick***, 408 A.2d 1151, 1153 (Pa.Super. 1979). Pa.R.C.P. 1019(a) requires a plaintiff to plead only allegations of the "material facts on which a cause of action . . . is based."

The record reveals the following. Penn-Aire alleged that, after exchanging drafts of a proposed lease, "[e]ventually, the parties reached an

agreement" of terms acceptable to both parties, as evidenced in the email correspondence between the parties and the draft lease. Complaint, 1/16/13, at ¶¶ 11, 12. Penn-Aire also pled, however, that "it agreed to make and pay for the improvements requested by Defendants but only so long as Defendants committed to entering into a lease agreement for the Subject Premises." *Id*. at ¶9. It further averred that, "Due to the Defendants' express commitment to lease the Subject Premises, Plaintiff incurred costs and expenses to renovate the Subject Premises." *Id*. at ¶13. It alleged that Adapt was obligated to pay as reliance damages the amounts expended to renovate the property. *Id*. at ¶17. The trial court found that the Complaint alleged an "express commitment to lease the Subject Premises[,]" which, together with Penn-Aire's allegations that it relied upon that promise in undertaking the renovation, was sufficient to support a cause of action sounding in promissory estoppel. Trial Court Opinion, 6/3/16, at 8.

We agree. Furthermore, the record contains additional indications that Penn-Aire was proceeding under that theory. Adapt filed a motion for summary judgment based on the statute of frauds. In opposition to the motion, Penn-Aire argued that the statute of frauds would not affect its "cause of action for reliance damages." Plaintiff's Supplemental Brief in Opposition to Summary Judgment, 9/30/13, at 2. Penn-Aire also supplied Mr. Taylor's affidavit to the effect that he agreed to pay for the requested renovations based on Adapt's express commitment to rent the premises.

Thus, we find no merit in Adapt's position that promissory estoppel was not sufficiently pled or argued to support relief.

Having concluded that facts supporting promissory estoppel were pled, thus placing Adapt on notice that Penn-Aire was seeking reliance damages based on that theory, we turn to Penn-Aire's contention that, since Adapt did not move for a nonsuit or directed verdict on the promissory estoppel claim, it is not entitled to JNOV on that claim. The law is well settled that a trial court may only grant post-trial relief if the "grounds therefor . . . were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions or law, offer of proof or other appropriate method at trial." Pa.R.C.P. 227.1(b)(1). An oral or written motion for nonsuit at the close of the plaintiff's case, Pa.R.C.P. 230.1(c), or a Rule 226(b) motion for directed verdict at the close of all the evidence, will also suffice to preserve issues. *See Haan v. Wells*, 103 A.3d 60 (Pa.Super. 2014). However, in order "to preserve the right to request a JNOV post-trial, a litigant must first request a binding charge to the jury or move for a directed verdict or a compulsory non-suit at trial." *Youst v. Keck's Food Serv.*, 94 A.3d 1057, 1071 (Pa.Super. 2014).

Adapt moved for a non-suit and directed verdict. However, the motions implicated only the breach of contract claim based on the lease agreement and did not challenge the promissory estoppel claim. Thus,

- 14 -

Adapt waived any sufficiency challenge to that claim, and we affirm the trial court's refusal to grant JNOV on that alternative basis.

Moreover, even if we did not find Adapt's claim waived, it would not entitle Adapt to relief. Adapt contends that the language in the proposed lease to the effect that "there are no representations, inducements, promises or agreements, oral or otherwise between the parties[,]"precludes any finding of a promise and Penn-Aire's "supposed reliance could not have been reasonable as a matter of law." Appellant's brief at 10. Penn-Aire relies upon ***Shoemaker***, ***supra***, in support of its contention that the reasonableness of reliance is a question of fact for the factfinder.

This Court reaffirmed in ***Eigen v. Textron Lycoming Reciprocating Engine Div.***, 874 A.2d 1179 (Pa.Super. 2005), a fraud in the inducement case, that justifiable reliance upon the representation of another must be reasonable, and that such reliance is a question of fact. In an action on an insurance policy based on an oral representation that differed from provisions in the written policy, we held that an insured was not barred from asserting that he justifiably relied upon the oral representations. ***Toy v. Metro. Life Ins. Co.***, 863 A.2d 1 (Pa.Super. 2004).

Next, Adapt alleges that there was no proof that Penn-Aire actually relied upon Adapt's representations that it was going to lease the premises. It points to Mr. Taylor's admission that, even before a draft lease was tendered, he engaged Mr. Matthews to build out the space.

The trial court, sitting as the fact-finder, found that "[Penn-Aire] relied on the indications that [Adapt was], in fact, going to lease said properties in making the alterations specific to their needs." Findings, 10/26/15, at 2. We must give the trial judge's findings in this non-jury case the same deference we would accord to a jury verdict. **Olmo v. Matos**, 653 A.2d 1, 5-6 (Pa.Super. 1994). Since the renovations had to be completed prior to Adapt's occupancy of the leased premises, and Adapt initially desired a June 1, 2012 effective date, it was not unreasonable for Penn-Aire to rely upon Adapt's promise to enter the lease and commence the build out while the lease terms were being finalized. The trial court concluded just that: "Adapt essentially promised to enter into the lease, through its communications and assistance in the pre-execution build out of the office[,]" which "induc[ed] Penn-Aire to undertake some of its obligations of the lease prior to execution." Trial Court Opinion, 6/3/16, at 5.

Finally, Adapt contends that Penn-Aire failed to prove that Adapt should have expected that its words or actions would induce Penn-Aire to incur the costs of renovation, an unlikely scenario given the terms of the lease. This position is untenable where Adapt's members met with Penn-Aire's contractor, advised him of their needs, and observed the build out of the premises. For all of the foregoing reasons, we find no merit in Adapt's challenge to the court's application of promissory estoppel as the basis for relief.

Adapt's second issue is a challenge to the trial court's award of damages and to the amount of those damages. It contends that Penn-Aire was only entitled to compensation for the costs of the "elaborate" renovations it undertook in reliance upon Adapt's promise to lease the premises. Although Penn-Aire had the burden of proving those damages with reasonable certainty, Adapt maintains that it neglected to parse out the expenses associated with Adapt's unique renovations and those that were required for any tenant. Adapt contends that the trial court's award of all the damages of the renovation was improper and requires a new trial.

With respect to a request for a new trial, our standard and scope of review follows:

> To review the two-step process of the trial court for granting or denying a new trial, the appellate court must also undertake a dual-pronged analysis. A review of a denial of a new trial requires the same analysis as a review of a grant. First, the appellate court must examine the decision of the trial court that a mistake occurred.

> At this first stage, the appellate court must apply the correct scope of review, based on the rationale given by the trial court. There are two possible scopes of review to apply when appellate courts are determining the propriety of an order granting or denying a new trial. There is a narrow scope of review: where the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason, and the appellate court must review that reason under the appropriate standard.
> Conversely, if the trial court leaves open the possibility that reasons additional to those specifically mentioned might warrant a new trial, or orders a new trial in the interests of justice, the appellate court applies a broad scope of review, examining the entire record for any reason sufficient to justify a

new trial. Even under a narrow scope of review, the appellate court might still need to examine the entire record to determine if there is support for any of the reasons provided by the trial court.

The appropriate standard of review also controls this initial layer of analysis. If the mistake involved a discretionary act, the appellate court will review for an abuse of discretion. If the mistake concerned an error of law, the court will scrutinize for legal error. If there were no mistakes at trial, the appellate court must reverse a decision by the trial court to grant a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred.

***Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 891 (Pa.Super. 2011).

The trial court found, as a matter of law, that Penn-Aire was entitled to recover reliance damages, *i.e.*, the amount it spent improving the property to meet Adapt's specifications. It specifically rejected Adapt's position that Penn-Aire was not entitled to recover **all** of the costs of the renovations it undertook. The court reasoned: "Even assuming it was true that the build out would be necessary regardless of the prospective tenant, Penn-Aire undertook specific renovations at the specific time due to Adapt's promises to enter into the contract." Trial Court Opinion, 6/3/16, at 5. The court added that reliance damages included the expenses incurred by the promisee in reliance upon the promise, and since Penn-Aire undertook the build out in reliance upon Adapt's promise, it was "immaterial if any of the costs of the build out would have been required for another tenant." **Id**. at 6.

We disagree. The reliance interest is an attempt to place the promisee back in the position in which he would have been had the promise not been breached and should be only the amount necessary to prevent injustice. The damage award herein was a windfall for Penn-Aire. Penn-Aire retained the benefit of a fully renovated and ready-to-lease space, which was undoubtedly of greater value than the unimproved space. In addition, it was awarded damages of $75,000, the entire cost of making the renovations.

Mr. Taylor and his contractor acknowledged that many of the renovation expenses would have been incurred to remediate the property just to make it habitable for any tenant. The rental space had no heat or air conditioning, old windows, an uneven concrete floor, walls that required demolition and replacement, and the existing bathroom needed new plumbing and fixtures. Mr. Taylor maintained, however, that he would not have spent as much on the build out without the assurance of the multi-year $3,000 per month lease. In other words, the promise of a multi-year $3,000 lease induced him to spend more than he normally would have spent.[4] The difference between what Mr. Taylor would have spent and the amount

_____

[4] We note that Penn-Aire pled that it relied on indications that Adapt was going to lease the property when it made alterations specific to Adapt's needs. *See* Reply to New Matter, 2/27/13, at ¶¶ 7, 8.

actually spent in reliance upon Adapt's promise is the proper starting point for calculating reliance damages.

Additionally, evidence was adduced that Penn-Aire was able to re-lease the property to another tenant without substantial modification and was receiving rental income. In short, by awarding damages in the full amount of the improvements, and refusing to acknowledge and offset Penn-Aire's retention of the benefit of those improvements, the trial court placed Penn-Aire in a far better position than it would have been in had the promise not been breached. For these reasons, we remand for a new trial limited to damages.

Judgment affirmed in part and reversed in part, and case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/26/2017